■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DARRYL MORTON, Respondent. — Appeal by the People from an order of the Supreme Court, Queens County (Glass, J.), dated May 12, 1982, which, upon reargument, *inter alia,* granted defendant's motion to suppress certain statements.

Order reversed, on the law, defendant's motion to suppress denied, and matter remitted to the Supreme Court, Queens County, for further proceedings.

On the morning of March 12, 1981, four New York City detectives, including Detectives Miele and Drucker, arrested the defendant in Pemberton, New Jersey for the murder of one Bernard Stanley. Stanley's murder had occurred on May 23, 1980 in Queens County, New York and was being investigated by Miele. The detectives took the defendant to the local police station in Pemberton, where he was read his *Miranda* rights. He was then transported to the Burlington County's prosecutor's office where he was again given his *Miranda* rights. Later that day, at approximately 3:00 P.M., defendant was produced before a Judge of the Superior Court of New Jersey where he waived his right to extradition and agreed to return voluntarily to New York. Specifically, the following colloquy occurred between the New Jersey court and the defendant:

"THE COURT: All right. The Prosecutor tells me that you're wanted in the State of New York, more specifically, Queens County in the City of New York for the crime of murder. That being the case, you can do one of two things. You can go back voluntarily right now or on the other hand you have a legal right to extradition. This means that you have a legal right to require the governor of New York State to send papers to the governor of New Jersey asking that you be sent back. If the governor of New Jersey agreed to comply with that request and send you back, he would then issue what is called a rendition warrant. Up until that time, you would be entitled to bail. Once a rendition warrant issues, you would no longer be entitled to bail.

"However, you would be entitled to a writ of habeas corpus. You would be entitled to a hearing. You would be entitled to an attorney. If you cannot afford an attorney, I would furnish one to you free of charge.

"At that hearing, I would not decide whether or not you commited [*sic*] the crime of murder in New York State. I would decide three things only. I would decide, No. 1, whether or not you are Darryl V. Morton; No. 2, whether these charges are pending against you in the State of New York, and No. 3, whether you were in New York at the time specified in the charge. If I found all three of those three things to be true, I would order you sent back immediately. If I found any one of them not proven, I would release you.

"Knowing this, which do you want to do, do you want to go back now or do you want extradition?

"THE DEFENDANT: I want to go back now, Your Honor.

"THE COURT: All right. Have him sign the original of the written waiver of extradition in the Court's presence, Prosecutor.

"(Defendant complies.)"

Defendant was immediately taken back to the 112th Precinct in Queens County to be processed on the Stanley murder and arrived there around 7:00 P.M. He was again given his *Miranda* rights which he again waived. Defendant thereafter requested to speak with his father, and after doing so, offered to, and did in fact, make inculpatory statements with regard to the unrelated murder of one Donald Lennon. Lennon's murder had occurred on January 6, 1981, in Queens County, and was being investigated by Detective Drucker.

By notice of motion dated April 30, 1981, defendant moved, *inter alia,* to suppress his statements on the grounds that (1) his arrest in New Jersey was illegal and violated his Fourth Amendment rights, and (2) his statements were involuntary, and violated his Fifth Amendment rights.

After a hearing, Criminal Term orally denied defendant's motion to suppress his statements. Thereafter, by notice of motion dated April 2, 1982, defendant moved to reargue Criminal Term's decision. In a supporting affirmation, defendant's counsel argued that (1) "the proceedings in New Jersey constituted a critical stage of the criminal charges and case against the defendant", (2) "as a result * * * the defendant's right to counsel had 'indelibly attached' " and (3) "no waiver of the right to counsel for 'statement' purposes could be made except in the presence of counsel".

In granting defendant's motion to reargue, and, upon reargument, granting his motion to suppress, Criminal Term held, *inter alia,* that:

(1) in New York, the constitutional right to counsel attaches not only upon the commencement of formal criminal proceedings, but even at "an earlier stage if there has been significant judicial activity",

(2) the hearing before the New Jersey Superior Court and its order "directing that the defendant, Darryl Morton, be delivered to the State of New York" was "in fact and in law the actual commencement of criminal prosecution" or at least had to be "viewed as * * * 'significant' judicial intervention", and

(3) the defendant's constitutional right to counsel not only attached by reason of the court hearing in New Jersey, but "indelibly" attached, thereby precluding defendant's waiver of counsel in the absence of counsel.

We disagree with the reasoning and holding of Criminal Term.

It is beyond dispute that in New York the constitutional right to counsel not only attaches upon the formal commencement of a criminal action, through the filing of an accusatory instrument, e.g., an indictment or felony complaint (*People v Blake,* 35 NY2d 331; *People v Settles,* 46 NY2d 154; *People v Samuels,* 49 NY2d 218; CPL 1.20, subds 1, 16, 17), but also attaches "when there has been significant judicial activity, even though that activity precedes the formal commencement of criminal prosecution" (*People v Smith,* 62 NY2d 306, 314; *People v Coleman,* 43 NY2d 222 [order requiring a person's appearance in a lineup]; *People v Sugden,* 35 NY2d 453 [order authorizing the taking of a person, incarcerated for an unrelated crime, to the scene of the crime]). However, all of these instances have involved " 'adversary judicial criminal proceedings' " (*People v Blake, supra,* p 340, quoting from *Kirby v Illinois,* 406 US 682, 689). In contrast, it has been consistently held that the extradition process is not a critical stage of a criminal proceeding and the constitutional right to counsel does not attach thereat (see *Powell v State,* 19 Ariz App 377, 507 P2d 989, 990; *Roberts v Hocker,* 456 P2d 425, 427-428 [Nev]; *Matter of Medieros,* 552 SW2d 156, 158 [Tex]; *Utt v State,* 443 A2d 582, 589 [Md]; *Sullivan v State,* 43 Ala App 133, 181 So 2d 518, 520; *State v Tyler,* 398 So 2d 1108, 1112 [La]). Accordingly, Criminal Term erred in holding that defendant's right to counsel attached as a result of the New Jersey proceeding.

Moreover, even assuming, *arguendo,* that (1) the New Jersey proceeding constituted significant judicial activity prior to the formal commencement of a criminal action, and (2) defendant's constitutional right to counsel did attach, the ultimate result of this appeal would not be different. Our Court of Appeals has

recently stated that "there is a clear distinction between cases in which by reason of the commencement of formal criminal proceedings a defendant's right to counsel has 'indelibly attached' and can be waived only in the presence or with the concurrence of counsel * * * and those in which significant judicial activity prior to formal commencement of a criminal proceeding establishes a right to counsel which may be waived in the absence of counsel * * * provided only the waiver is voluntarily and intelligently made" (*People v Smith, supra,* pp 314-315).

Criminal Term found that the *Miranda* rights (including the right to counsel) were properly given and, although an attorney was not present, were voluntarily and intelligently waived by defendant. Accordingly, a finding that the New Jersey proceeding constituted significant judicial activity would not mandate suppression of defendant's statements (*People v Smith, supra*).

Accordingly, the order appealed from must be reversed, and defendant's motion denied. Titone, J. P., Lazer, Mangano and O'Connor, JJ., concur.