■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DARREL HOWARD, Also Known as SYLVESTER MAYS, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Browne, J.), rendered June 11, 1980, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial of defendant's motion to suppress certain statements to the police.

Judgment reversed, on the law, motion granted to the extent of suppressing defendant's statements to the police made on April 28, 1979 and May 3, 1979, and new trial ordered.

On April 28, 1979 Detective Sergeant Ralph Simmons, a member of the Metro Fugitive Squad of the Police Department of Atlanta, Georgia, received a telephone call from the DeKalb County, Georgia, Police Department informing him that Darrel Howard, the defendant herein, also known as Sylvester Mays,

was wanted by the New York City Police Department for murder and robbery and could be found in a hotel at a specified address in Atlanta. Simmons then telephoned the New York City Police Department to find out if there was a warrant outstanding for the defendant. He spoke with Detective Simms, who informed Simmons that he was looking for Sylvester Mays, who might be registered at the Hilton Hotel under the name Michael Smith, and that he was going to court to obtain an arrest warrant. Simmons testified that Simms gave him a description of the defendant and advised him that he had a warrant and was going to court to get it signed. Simms informed Simmons that he would forward a teletype as soon as possible.

Simmons proceeded to the hotel, the alleged location of the defendant. Upon arriving he checked the register and found that a Michael Smith was registered in room 515. Simmons secured a passkey. As he opened the door to the room, Simmons announced that he was a police officer and informed the defendant that he was under arrest. Defendant presented an identification card in the name of Michael Smith.

Simmons took the defendant to the police station. Upon arriving, Simmons telephoned Simms, who informed him that he had obtained the warrant and would send it down to Atlanta. The teletype was sent at 5:27 P.M. on the afternoon of April 28, 1979. Simms elaborated on the facts of the case and asked Simmons to advise the defendant of his rights and question him about the case. Simmons advised the defendant of his rights and in response the defendant replied, "Yeah, man I've had these rights advised to me before, I know what it's all about". Simmons had the defendant sign the rights form. Thereafter, Simmons advised the defendant that there was a warrant for his arrest in New York City and asked the defendant if he wanted to make a statement. The defendant responded "Yeah man, I want to go ahead and get it all over with". Thereafter, the defendant gave a three-page statement which he signed.

On May 3, 1979 Simms proceeded to an Atlanta jail to pick up the defendant. Simms identified himself and advised the defendant of his rights. After acknowledging his rights the defendant said: "Wait a minute, I didn't kill the manager. I just went in on the robbery. Walker shot the guy. It was a mistake. You'll see, he [sic] going to cop to it when we reach New York".

The defendant sought to suppress the statements he had made to law enforcement officials, claiming (1) that he was coerced into making a statement because of physical threats by Simms and (2) that Simmons lacked probable cause to arrest him and therefore all the statements should be suppressed because they were the product of an illegal arrest.

The hearing court denied defendant's motion to suppress these statements. We reverse, on grounds other than those raised before that court. The defendant argues for the first time on appeal that his uncounseled statements must be suppressed because they were elicited after criminal proceedings had commenced (see *People v Samuels,* 49 NY2d 218). The right to counsel has been deemed to be of such importance that a claim of deprivation may be raised for the first time on appeal (*People v Cullen,* 50 NY2d 168) as long as there is a sufficient basis in the record for reviewing the issue (*People v Kinchen,* 60 NY2d 772).

Once criminal proceedings have commenced against a defendant, his right to counsel has attached (*People v Samuels, supra*). A criminal action commences with the filing of an accusatory instrument, which includes a felony complaint (CPL 1.20, subds 1, 8, 17; *People v Samuels, supra*). A felony complaint or other accusatory instrument must precede the issuance of an arrest warrant (CPL 120.10, 120.20). Once criminal proceedings have commenced and the right to counsel has therefore attached, it cannot be waived without counsel's presence (*People v Samuels, supra; People v Settles,* 46 NY2d 154).

Although the exact time at which the warrant was signed is unknown, both Detectives Simmons and Simms agreed that the written confession of April 28 was procured after Simms had obtained the warrant. Indeed the People had argued before the hearing court that probable cause existed for defendant's arrest in Atlanta by reason of the issuance in New York, prior thereto, of a warrant for his arrest. Since the right to counsel had already attached before both the April 28 and May 3 statements were given, defendant could not properly waive his right to counsel without counsel being present. The holding of the Court of Appeals in *People v Samuels* (*supra*) leads to the inescapable conclusion that under the circumstances of this case the defendant's statements should have been suppressed (cf. *People v Morton,* 104 AD2d 569). Weinstein, J. P., Brown, Boyers and Eiber, JJ., concur.