■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v

ANDRE CLARK, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Westchester County (Kepner, J.), rendered November 5, 1982, convicting him of burglary in the second degree, grand larceny in the second degree, criminal mischief in the fourth degree, and criminal possession of stolen property in the first degree, and imposing sentence.

Judgment reversed, on the law, and as a matter of discretion in the interest of justice and new trial ordered.

On June 20, 1981, Officer John Lanza was on a burglary stakeout in his van when he observed two men coming out of a house with what appeared to be a stereo. One of the men walked over to the van and peered in; Lanza testified at trial that he recognized this man to be the defendant, Andre Clark. The defendant then opened the passenger door of the officer's van; again, the officer saw his face, and when Lanza identified himself as an officer the defendant fled. The officer chased Clark's car in his van but was unable to apprehend him. The next day an arrest warrant was issued against the defendant but despite another sighting of the defendant on the parkway and a subsequent high speed chase, the defendant was not apprehended and arrested until July 21, 1981, in his motel room.

Following his arrest and after being advised of his *Miranda* rights, the defendant waived his right to counsel and confessed to the June 20 burglary and several other burglaries in the New Rochelle area. After this confession, the police drove the defendant through the streets of New Rochelle, past houses where recent burglaries had been reported. The defendant pointed out houses he had burglarized and explained how he had gained entry into them. As they drove past the house where the June 20 burglary had occurred the defendant turned to Lanza and stated, "I know where you're coming from. You were the guy in the van. Why didn't you shoot me?"

After a *Huntley* hearing, the court found that the defendant had intelligently and voluntarily waived his *Miranda* rights and held the statements admissible. At trial, however, the People introduced only the above-quoted statement made to Lanza.

The right to counsel attaches when a criminal proceeding has begun *(People v Blake,* 35 NY2d 331). A criminal proceeding commences when an accusatory instrument such as an indictment is filed (CPL 1.20 [1], [17]). An indictment or other accusatory instrument must precede issuance of an arrest

warrant (CPL 1.20 [28]; *People v Samuels,* 49 NY2d 218; *People v Blake, supra).* Here, when the arrest warrant was issued against the defendant, his right to counsel had already attached and any statements made by him outside the presence of counsel should have been suppressed *(see, People v Howard,* 106 AD2d 663).* Additionally, the People's contention that the statement made during the ride was spontaneous and therefore admissible is without merit. To be spontaneous, a statement must not be the result of inducement, provocation, encouragement or acquiescence, no matter how subtly employed *(People v Maerling,* 46 NY2d 289, 302-303). The police, after having obtained a confession from the defendant, could have had no other purpose for driving him from house to house than to extract further statements from him. Accordingly, the statements made by the defendant must be suppressed.

Additionally, a review of the record leads us to the conclusion that the primary issue at trial was the identification of the defendant as the perpetrator of the crimes charged. The officers' observations occurred at night, while they were seated in their cars, and the defendant was not arrested until weeks later. The jury was given no guidance as to what criteria should be applied when evaluating the identification testimony. Under the circumstances of this case, it was incumbent upon the trial court to give an appropriate charge which would have directed the jury to consider and balance such factors as the officers' opportunity for observation, the weather and lighting conditions and the duration and the distance of the viewing *(see, People v Daniels,* 88 AD2d 392; *People v Gardner,* 59 AD2d 913).

The court's failure to give an identification charge was compounded by the prosecutor's repeated comments during summation which amounted to vouching for the truth and veracity of the policemen. In fact, the prosecutor concluded his summation with the comment that the key issue for the jury to focus on was "why would [the officers] get on the stand and commit perjury?". The practice of vouching for prosecution witnesses has been condemned *(see, People v Marks,* 6 NY2d 67, *cert denied* 362 US 912) and the People's contention that these remarks were proper response to defense counsel's summation is belied by the record. Additionally, the prosecutor commented on the fact that the defendant had registered at the motel under an assumed name, which he stated was not the act of an innocent man. As this fact was not in evidence, the prosecutor made himself an unsworn witness

during summation. This was improper and must not be repeated.

We have considered the defendant's other contentions and find them to be without merit. Lazer, J. P., Mangano, Gibbons and Bracken, JJ., concur.