**John E. WALRATH, Plaintiff,**

v.

**UNITED STATES, et al., Defendants.**

**No. 93 C 3984.**

United States District Court,
N.D. Illinois, E.D.

July 29, 1993.

Daniel S. Alexander, Law Offices of Daniel S. Alexander, Chicago, IL, for plaintiff.

Jonathan C. Haile, Asst. U.S. Atty., U.S. Attys. Office, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff John E. Walrath ("Walrath") brings this complaint against the United States, Carol Getty ("Getty"), the Regional United States Parole Commissioner, Carol Muller ("Muller"), an analyst for the United States Parole Commission ("USPC"), Michael Stover ("Stover"), General Counsel for the USPC, and John Magnuson ("Magnuson"), a case analyst for the USPC, alleging various violations of his constitutional rights. Presently before us is Walrath's motion for a temporary restraining order to prevent the USPC from requiring him to submit to a polygraph and penile plethysmograph as a condition of his parole. Walrath also seeks preliminary and permanent injunctive relief. Because defendants received notice, appeared before this Court, and had an opportunity to respond in writing to Walrath's motion, we will rule directly on his motion for a preliminary injunction. *See Levas & Levas v. Village of Antioch,* 684 F.2d 446, 448 (7th Cir.1982) (district court properly treated motion for TRO as a motion for preliminary injunction when opposing party had notice and appeared at the hearing to contest it). For the following reasons, we deny plaintiff's motion.

### I. Factual Background

On October 13, 1970, a jury convicted John Walrath of kidnapping and sexually molesting a six year old boy. Three men observed Walrath trying to drown the child in Lake Michigan, and Walrath was captured shortly thereafter.

Having been sentenced to 35 years of imprisonment in 1971, Walrath was first paroled in 1983. His parole was revoked five years later when he was caught stealing and resisted arrest. On May 8, 1992, Walrath was paroled for the second time. The USPC again revoked his parole, however, when Walrath allegedly threatened his parole officer and intimated that he would not comply with the mental health condition of parole. Although reviewing hearing officers twice found no probable cause for the revocation of Walrath's parole, he nonetheless was held until March 4, 1993, when he was released.

One of the special conditions of Walrath's parole is that he participate in a mental health treatment program. Currently, Walrath's probation officer recommends that he undergo evaluation and treatment at the Isaac Ray Center. This facility specializes in pedophilia and other deviant sexual practices,

and requires a penile plethysmograph examination as part of a patient's initial evaluation.[1]

Walrath seeks to enjoin the USPC from requiring the administration of a plethysmograph or a polygraph as a condition of parole, claiming that it violates his Fifth Amendment right against self-incrimination and his Fourth Amendment right against unreasonable searches and seizures.[2]

## II. Discussion

In order to obtain a preliminary injunction, Walrath must establish (1) that he has a reasonable likelihood of success on the merits, (2) that he will suffer irreparable injury and has no adequate remedy at law, (3) that the harm with which he is faced outweighs the harm a preliminary injunction would impose on defendants, and (4) that an injunction would not disserve the public interest. *See Cox v. City of Chicago,* 868 F.2d 217, 219 (7th Cir.1989). Walrath must establish all four conditions to warrant an injunction.

■ At the outset, we observe that parolees, like probationers, "do not enjoy 'the absolute liberty to which every citizen is entitled, but only [a] conditional liberty properly dependent on observance of special parole restrictions.'" *United States v. Thomas,* 729 F.2d 120, 123 (2d Cir.1984), *quoting Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Indeed, probationers have been prohibited from owning particular types of businesses, *United States v. Alexander,* 743 F.2d 472 (7th Cir.1984), from running for political office, *United States v. Tonry,* 605 F.2d 144 (5th Cir.1979), from associating with known homosexuals, *United States v. Kohlberg,* 472 F.2d 1189 (9th Cir.1973), and been required to submit to drug screening urinalyses, *United States v. Williams,* 787 F.2d 1182 (7th Cir.1986), and to endure searches without a warrant or probable cause, *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987).

With this in mind, we turn to the likelihood that Walrath will succeed on the merits of his claim. First, because Walrath is not scheduled for a polygraph, nor is one required by the Isaac Ray Center to which he has been referred, this proposed condition does not pose an imminent threat to Walrath's constitutional rights. Byrne Affid. at 5. Accordingly, we will limit our analysis to the issue of whether requiring a plethysmograph as a condition of release violates the Fifth or the Fourth Amendment.[3]

### A. Fifth Amendment

■ Other than making the conclusory statement that he stands a reasonable likelihood of success on the merits, Walrath does not make any arguments explaining why he is likely to prevail on his claim. The government, on the other hand, argues that a plethysmograph would not implicate Walrath's Fifth Amendment right against self-incrimination because the procedure is not testimonial, but is rather a physical test of Walrath's sexual reactions to various stimuli. Moreover, as opposed to gathering information which may be used to incriminate Walrath, the test is designed to determine how best to help him overcome any sexual deviance he might still harbor, so that he may be returned, safely, to society. Finally, there is no indication that any results from Walrath's plethysmograph could be used to criminally prosecute him for other acts. Instead, the results, like the treatment, might legitimately be used to assess the threat Walrath poses to

---

1. According to Dr. Jonathan Kelly, of the Isaac Ray Center:

    The penile plethysmograph is a test designed to measure the client's patterns of sexual arousal, and is administered as follows. The client places a penile circumference gage around his penis. A wire from the gage leads to an electronic machine which records the circumference of the client's penis on a line graph, while the client is presented with a series of audio and visual material. The client wears a hospital gown during the test.
    Kelly Affid. at 1.

2. In addition to the plethysmograph being required by the recommended mental health programs, the USPC, at the request of Walrath's probation officer, has made the plethysmograph and/or a polygraph a specific condition of Walrath's parole.

3. Because the plethysmograph is only being required as an element of Walrath's participation in a mental health treatment program, we will assess its constitutionality in that context.

society. Accordingly, it is not likely that Walrath will succeed on the merits of this portion of his claim.

### B. Fourth Amendment

■ The government concedes that requiring Walrath to submit to a plethysmograph impinges on his liberty. It contends, however, that parolees have more circumscribed rights than ordinary citizens, such that lesser standards apply when determining whether a parolee's Fourth Amendment rights have been violated. Fourth Amendment protection against unreasonable searches and seizure is one of the rights reduced by parole or probation status. *See, e.g., Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (probationer's property could be searched without warrant or probable cause, because the "special needs" of probation required such a restriction).

■ In determining when a probationer's or parolee's admittedly diminished rights are violated by a condition of probation or parole, the Seventh Circuit assesses whether a reasonable relationship exists between the condition and the purposes of the Probation Act (or the USPC). *United States v. Williams,* 787 F.2d 1182 (7th Cir.1986). Specifically, courts should consider (1) the intended goal of probation (or parole), (2) the extent to which the probationer (or parolee) should enjoy the same constitutional rights as other citizens, and (3) the legitimate needs of law enforcement.

■ With these guidelines in mind, we find that in these circumstances, requiring a plethysmograph as a condition of Walrath's parole does not constitute an unreasonable search or seizure. First, it is clear that one of the central purposes of parole is to rehabilitate a parolee and prepare him for constructive participation in society. An equally compelling purpose is to rehabilitate a parolee without jeopardizing public safety. In order to achieve both of these goals, the USPC is authorized to impose conditions on a parolee's release, and may require a parolee to participate in a drug or mental health treatment program. 18 U.S.C. § 4209; 28 C.F.R. 2.40(b). The requirement that Walrath enroll in a treatment program at Isaac Ray, then, is soundly within the authority of the USPC. Additionally, it is an eminently reasonable condition of a convicted child molester's parole.

The fact that two recommended institutions require the plethysmograph as an evaluative tool suggests that it serves a useful function in the treatment of sexual deviance.[4] Weighing against the value of the test, is its intrusion on Walrath's privacy. However, the plethysmograph is not exceptionally more intrusive than other physical or mental examinations. Ordinary physical examinations, which may involve full nudity and internal probes, are certainly as physically intrusive as a plethysmograph. Mental examinations, which require a subject to answer personal questions on a variety of subjects, like plethysmographs, invade a patient's mental privacy with one important distinction. In an interview, a subject has control over his responses, whereas the plethysmograph denies a patient the ability to disguise his reactions, but instead taps directly into involuntary responses. While acknowledging this difference, we recognize that a treatment program's success depends upon its ability to accurately assess a patient's condition, so that it may effectively intervene. To the extent that participation in a treatment program is a reasonable condition of Walrath's parole, then, it is likely that the requirement that he submit to a plethysmograph as an intake measure will likewise be found reasonable.[5]

---

**4.** Prior to Isaac Ray, Walrath's probation officer recommended Midwest Family Resource Associates. Midwest also specializes in treating sexual deviants and requires both a plethysmograph and a polygraph as part of its initial client diagnosis.

**5.** We, of course, can envision potential constitutional problems regarding less limited uses of the plethysmograph. Our decision today concerns a specific factual scenario: the USPC's threat to revoke Walrath's parole should he refuse to undergo a plethysmograph as a required test for participation in a mental health program such as that at Isaac Ray.

Because Walrath is unable to satisfy one of the elements for obtaining a preliminary injunction, we deny his request for preliminary injunctive relief.

### III. Conclusion

For the reasons set forth above, we deny Walrath's request for a preliminary injunction. It is so ordered.