OPINION OF THE COURT
Charles A. Kuffner, Jr., J.
Defendant having moved to reargue a memorandum decision of this court, the court grants reargument and recalls its decision dated September 1, 1994, submitting instead the following findings of fact and conclusions of law.
Defendant Diaz is charged with the murders of Angela Miranda Guzman and Julie Guzman during a robbery that occurred on April 28, 1993. The case came on before this court for the purpose of conducting a Huntley hearing.
Defendant now argues that his confession should be suppressed because it was taken in violation of his right to counsel which indelibly attached at the time of arrest because of the numerous judicial activities that preceded his being taken into custody. In addition, defendant also challenges the validity of his arrest because the police allegedly were using the parole warrant as a subterfuge to question defendant about a double homicide before his right to counsel attached *106 and the parole warrant, in any event, did not satisfy the requirements of Payton v New York (445 US 573). The question, apparently one of initial impression in this State, is whether a parole warrant is the functional equivalent of an arrest warrant for the purpose of a residential search.
As part of an omnibus motion counsel for defendant moved for various forms of relief, among which were included the usual panoply of pretrial constitutional litmus tests. Justice Norman Felig, in deciding that motion, granted several of the suppression-related hearings, including a Huntley, but specifically excluded Mapp and Dunaway relief.
Although the voluminous Rosario information provided counsel for defendant by the Assistant District Attorney as well as the underlying data available to the defendant himself was more than adequate to raise the specter of a Payton issue, the question was never posed in the omnibus motion. Justice Felig observed defendant failed to proffer any facts other than conclusory that the arrest was without probable cause. During the hearing which consumed two days no facts were elicited which established that the place of arrest was in fact defendant’s residence. The evidence was at best tangential but not probative. Accordingly, an oral application during the hearing seeking leave to argue the Payton question was denied.
It is axiomatic that defendant must have personal standing to assert a Payton issue and the burden of proof in that regard rests with him (People v Wesley, 73 NY2d 351; People v Jones, 182 AD2d 1066; People v Wilkerson, 108 AD2d 831). The prolific correspondence addressed to this court following the return date of the motion to reargue adequately presents the relevant legal considerations but omits to discuss this failure of proof. The residence in which defendant was arrested was never established beyond the presumptive rationale of counsel as defendant’s home or place where he had an expectation of privacy sufficient to trigger the Payton prohibitions.
On September 12, 1993 at 2:30 p.m., defendant Alex Diaz was arrested at 1640 North Albany Avenue in Chicago, Illinois, by New York City Housing Authority police officers and officers of the Chicago Police Department. At the time of the arrest a search of the dwelling did not reveal any contraband or other incriminating evidence. The arresting officers testified that defendant was advised of his Miranda rights approximately two hours after his arrest and at three later stages during his custodial interrogation at a Chicago precinct.
*107 The basis for defendant’s Chicago arrest was a parole warrant that had been issued in New York. Contrary to defendant’s claim, a review of the certified copy of the warrant and the court record indicate the parole warrant was in fact issued on November 17, 1992, as appears on the warrant copy and entered three days later, and not on the erroneous date of November 17, 1993. Defendant was taken to the Area 5 Station House in Chicago. He was questioned by police at about 4:40 p.m. after first being advised of his Miranda rights. The interrogation concerned the murders, as noted earlier, of two Richmond County women which occurred on April 28, 1993.
Initially, defendant gave a signed confession which he subsequently recanted. After further questioning, defendant admitted to the murders of Julie Guzman and her mother, Angela Guzman, which occurred in the course of a robbery at the victims’ home. The confession was thereafter transcribed on the consent of the defendant. An official statement was composed and signed by the defendant and the officers present during the confession. Prior to the transcription by the court reporter, defendant was again advised by the police of his Miranda rights. The defendant’s response was that he fully understood his rights and was willing to give the confession.
Throughout the custodial interrogation, defendant never mentioned that he had counsel on any pending charges and never requested an attorney. At the Huntley hearing, the arresting officers testified that defendant was in good physical and mental condition when he confessed to the crimes.
 While the court cannot find any New York authority directly on point, the relevant general principles giving direction within this State as well as Federal decisional law would warrant a finding that the arrest of defendant in Chicago on a valid parole warrant was lawful and not in violation of Payton mandates. Not only was a limited search of the place of arrest permissible, there was nothing legally offensive in the search that tarnished the reliability or admissibility of the confessions taken over two hours later.
Pursuant to Executive Law § 259-c (6) "[t]he state board of parole shall * * * have the power to revoke the parole or conditional release of any person and to authorize the issuance of a warrant for the retaking of such persons.” There is no dispute that defendant violated the conditions of his parole and fled to Chicago, Illinois, after absconding from a work *108 release program. Since the parole authorities had reasonable cause to believe that several violations of parole existed, the State Parole Board, acting pursuant to its power authorized by Executive Law § 259-c (6), had the right to revoke the conditional release and issue a warrant for the retaking of defendant.
The lawful mandate of the parole warrant clearly established the probable cause to seize defendant and take him into custody wherever he could be found (People v Dyla, 142 AD2d 423, 429) including a residence, commercial establishment, or a public facility. The probable cause to arrest pursuant to this warrant also formed the basis for a reasonable search by the police officer when related to the parole violation or exigent circumstances (People v Huntley, 43 NY2d 175), notwithstanding the search was conducted by police officers rather than defendant’s parole officer. The court finds that the search of the dwelling was incident to this violation of parole.
In any event, no evidence was obtained from the residence in which defendant was located to complete the prohibited sequence of an unlawful seizure as well as an unlawful search. Moreover, there was nothing attendant with the arrest that would amount to an unreasonable seizure requiring the imposition of the exclusionary rule as to the subsequent confessions (see, People v Dyla, supra).
In Griffin v Wisconsin (483 US 868), the United States Supreme Court found that a warrantless search of a probationer’s home based on "reasonable grounds” was consistent with Fourth Amendment considerations. There the search fulfilled the "special needs” or exigent circumstance exception to the usual probable cause requirement as found in Payton. "To a greater or lesser degree, it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only * * * conditional liberty properly dependent on observance of special [probational] restrictions.’ Morrissey v Brewer, 408 U. S. 471, 480 (1972)” (Griffin v Wisconsin, supra, at 874).
Here defendant’s liberty interest at the place of arrest — if indeed he had any interest — was severely limited by reason of his parole and fugitive status. If we assume counsel’s argument that the location of the arrest was in fact defendant’s residence or place where he had an expectation of privacy, then by analogy defendant is foreclosed from complaining of *109 the arrest and incidental search where, as here, a warrant existed. In contrast to counsel’s straw-grasping analysis, the issuance of the warrant by an administrative agency rather than some judicial authority is of no moment, if parole or probation officers may enter a defendant’s residence without either a warrant or probable cause (United States v Harper, 928 F2d 894, 896 [9th Cir 1991]; Walrath v United States, 830 F Supp 444, 446 [ND 111 1993]).
On the other hand, notwithstanding a police officer may be charged in this State with a showing of probable cause in order to measure the reasonableness of a search and seizure conducted at a parolee’s residence, the fact of parole status is a relevant consideration (People v Huntley, 43 NY2d 175) along with the colorable authority implicit in the warrant. Contrary to counsel’s rather creative interpretation of cited authority, People v Minley (68 NY2d 952) does not implicitly hold a parole warrant insufficient for Payton purposes. In that case the Court of Appeals merely affirmed the prohibition against warrantless arrests of defendants in their homes in the absence of exigent circumstances. The court never considered the full extent of a parole warrant’s authority.
If, as the court opines, the situs of the arrest was not such a place where defendant had a protected interest, the warrant gave rise to a right by the officers to inquire and arrest defendant if his presence was in clear view of the officers. We need not have to address the issue of whether the parole warrant is sufficient to search for a defendant secreted in a third party’s home, as it appears defendant’s presence at the address became known to the officers and defendant responded to their appearance.
Defendant also contends that his right to counsel had indelibly attached when the police arrested him on the parole warrant. Under the laws of this State, the indelible and nonwaivable right to counsel arises by reason of the commencement of formal criminal proceedings against a defendant (People v West, 81 NY2d 370; People v Samuels, 49 NY2d 218), or at an earlier stage where there is sufficient judicial activity. (People v Williams, 112 AD2d 259; see also, People v Morton, 104 AD2d 569.) The issuance of an arrest warrant or a court-ordered removal of a defendant, from custody to a crime scene, who is the target of a police investigation is sufficiently "judicial” in nature so that right to counsel indelibly attaches. (People v Sugden, 35 NY2d 453.) Additionally, formal criminal proceedings commence with the filing of an *110 accusatory instrument, such as an indictment, information or complaint. (People v Moore, 133 Misc 2d 900, 904.) A parole warrant is distinct from an accusatory instrument (People v Samuels, 49 NY2d 218, supra). A parole warrant, even though it authorizes taking defendant into custody, does not constitute significant judicial activity and thus no right to counsel indelibly attaches upon its issuance (People v Frankos, 110 AD2d 713). The defendant’s argument that he was denied his right to counsel when he was arrested on a parole warrant is without merit. Moreover, the arrest on a violation of parole does not preclude defendant in any event from waiving his right to counsel on an unrelated criminal matter (People v Terry, 179 AD2d 833).
The right to counsel did not, as defendant contends, indelibly attach when the police obtained a search warrant or several pen registers in New York. A search warrant is not considered an accusatory instrument (People v Avincola, 162 AD2d 288, 289), and defendant’s right to counsel would not attach upon its issuance. (People v Medvecky, 95 AD2d 921.) The judicial activity associated with a pen register’s issuance is generally, like a search warrant, designed for investigatory purposes. Under the circumstances demonstrated in this case, obtaining the pen registers did not elevate to the level of an accusatory stage. Indeed, considering defendant’s fugitive status, the pen registers were sophisticated tools for possibly locating him.
Nor was defendant’s arrest for violation of parole a "sham” or "ruse” in which the police were using the parole warrant as a pretext to question him about the double homicide while avoiding his right to counsel. The fact that the police were interested in questioning defendant about a murder does not make an otherwise valid parole warrant invalid or change the rules with respect to waiver of counsel (People v Frankos, 110 AD2d 713, supra; see also, People v Simons, 22 NY2d 533). Defendant’s arrest on the parole warrant was not invalid nor could it be made so because the police were anxious to question defendant about a crime more significant than the parole violation charge. (People v Acuna, 145 AD2d 427, 429; People v Cypriano, 73 AD2d 902, 903.) Even if the purpose of defendant’s arrest on a parole warrant was to question him about the murders, defendant’s Sixth Amendment rights were not violated. Permitting questioning on unrelated crimes violates neither the State Constitution nor ethical principles. (People v Bing, 76 NY2d 331, 349.) Accord *111 ingly, defendant’s argument that his arrest on a parole warrant was a sham negating his inculpatory statements is without merit.
Defendant also maintains he was not given sufficient notice of his right to counsel when the arresting officers advised him of his Miranda rights when reading them from a card. In People v Clee (89 AD2d 188), the First Department emphasized that a reading of the Miranda warnings by police constitutes sufficient notice to a criminal defendant of his constitutional right to counsel. The court rejected defendant’s argument that the Miranda warnings were insufficient because of the police’s failure to state explicitly that defendant could have an attorney present during questioning. (Supra, at 192.) The Second Department more recently held that even the exact language found in Miranda v Arizona (384 US 436) "need not be utilized by the police as long as the substance of what is said adequately informs the defendant of his constitutional rights.” (People v Evans, 162 AD2d 702; People v Thomches, 172 AD2d 786.)
In People v Pino (116 AD2d 601, 602), the Second Department held that "where a defendant indicates he understands his rights, gives an oral statement, and has had prior contacts with the police, this will be sufficient to find that he knew what he was doing and waived his rights.” Here, the police read defendant his Miranda rights from a card soon after his arrest and then at three other times during his custodial interrogation. The arresting officer read each of the six Miranda warnings listed on the card and asked the defendant if he understood each of the rights read to him and the defendant responded affirmatively. According to uncontroverted testimony of the arresting officers, the defendant was not under the influence of alcohol or any other drug at the time of his arrest and custodial interrogation. Defendant received food and drink when requested, did not complain of being tired, and received no promises or threats. The nature of the testimony indicates the interrogation took place in an atmosphere that was not coercive, debilitating or threatening nor conducted in an abusive, deceptive manner undermining the defendant’s rights.
Additionally, the defendant has a previous arrest record, having been arrested several times before for various felonies, and thus is familiar with the criminal justice system and its procedural safeguards. Therefore, the reading of the Miranda warnings by police was sufficient to inform the defendant of *112 his constitutional right to counsel. The defendant knowingly, intelligently and voluntarily waived his right to counsel (People v Williams, 112 AD2d 259).
Having waived his right to counsel prior to questioning and having voluntarily given a statement solely with respect to the homicides, defendant "voluntarily chose to forego legal representation” (People v Bing, 76 NY2d 331, 349, supra), and "his questioning does not abridge his right to counsel (People v Rogers, 48 NY2d 167).” (People v Baptiste, 172 AD2d 363, 364.)
Defendant’s motion to suppress his statements is denied.