[639 NYS2d 423]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ANGEL HERNANDEZ and RUDOLFO HERNANDEZ, Respondents.

Second Department, February 26, 1996

APPEARANCES OF COUNSEL

*Richard A. Brown, District Attorney* of Queens County, Kew Gardens *(Nicole Beder, Steven J. Chananie, John M. Castellano* and *Gonzalo Pinacho* of counsel), for appellant.

*Cheda & Sheehan,* Jackson Heights *(Thomas Sheehan* of counsel), for Angel Hernandez, respondent.

## OPINION OF THE COURT

BRACKEN, J. P.

Society is not prepared to recognize as legitimate whatever subjective expectation of privacy an escaped prisoner might have with respect to the confines of the house or apartment in which he is being harbored by an obliging friend or relative. For this basic reason, we hold that the defendant Angel Hernandez, who had escaped from a work-release program and who was being protected by his brother, the codefendant Rudolfo Hernandez, has no standing to object to the search of the latter's apartment.

The defendant Angel Hernandez absconded from a prisoner work-release program on or about November 5, 1992. Subsequent investigation established that he was "running with Alberto Rodriguez, who was a parole violator with an active warrant". The defendant Angel Hernandez, in addition to being an absconder, was, according to a police witness, "known to carry weapons and [to] be violent".

On February 8, 1993, investigating officers arrived at 87-72 Lefferts Boulevard where the codefendant Rudolfo Hernandez maintained a two-floor apartment. Information provided by various citizens had established the likelihood that the defendant Angel Hernandez could be found at his brother's apartment. The officers also had reason to believe that Alberto Rodriguez could be found at this location. It was stipulated in open court that the officers also had a "detainer warrant" for Angel Hernandez, who, as noted above, had escaped from the lawful custody of the Department of Correctional Services.

The two defendants, Angel and Rudolfo Hernandez, were secured in the first floor living room area of Rudolfo's apartment shortly after the officers' entry. The officers noticed "numerous crack vials and marijuana cigarette butts throughout this location".

One group of officers proceeded upstairs, continuing what the People characterize as a "protective sweep". After arriving on the second floor, these officers encountered Rudolfo's wife, who, in response to their request, advised the officers that Alberto Rodriguez was not present in the apartment. One officer asked Ms. Santiago whether the officers might "check the area for the subject". This officer would later testify that Ms. Santiago consented.

Pursuant to this alleged consent, the officers examined the interior of a closet, and saw, "in plain view", a bulletproof vest and a box of ammunition. The officers then asked Ms. Santiago if there were any weapons on the premises. She allegedly responded affirmatively, directed the officers to a dresser, and proceeded to open one of the drawers. For safety reasons, the officers stopped Ms. Santiago from opening the drawer, and one officer then discovered a .22 caliber semi-automatic with a silencer, and two fully automatic submachine guns.

While this group of officers was upstairs, one of the officers who had remained downstairs with the defendants was "looking around the room because it was alleged the subject was with a third person". This officer observed an open brown bag in the midst of the crack vials, and, on the inside of the bag, he saw "several vials of crack cocaine, bundled, packaged".

The Supreme Court granted those branches of both defendants' omnibus motions which were to suppress physical evidence. The court found that the officers had no right to enter Rudolfo Hernandez's apartment *(see, Payton v New York,* 445 US 573; *Steagald v United States,* 451 US 204), even though the court found, as a matter of fact, that the officers "had a warrant of arrest for Angel [Hernandez]". The court concluded, also, that the officers had exceeded the scope of any "protective sweep" by "rummag[ing]" for evidence on the second floor of the apartment, after both defendants had been immobilized on the first floor. The court also concluded that whatever consent might have been given to this search by Ms. Santiago was "under duress". For the following reasons, we modify the Supreme Court's order.

We agree with the People's first contention on appeal, i.e., that the "defendant Angel [Hernandez] had no legitimate expectation of privacy in his brother's apartment". We therefore hold that Angel Hernandez has no standing to assert that the search of Rudolfo Hernandez's apartment was illegal. As an escaped prisoner, Angel Hernandez was "no more than a trespasser on society" *(United States v Roy,* 734 F2d 108, 111)

who was "obviously * * * not legitimately on the premises" (*State v Hiott,* 276 SC 72, 77, 276 SE2d 163, 165, cited in *United States v Roy, supra,* at 111). Whatever subjective expectation of privacy Angel Hernandez may have had in respect to the confines of Rudolfo Hernandez's apartment, society will "not recognize as reasonable the privacy rights of a defendant whose presence at the scene of [a] search was 'wrongful' " (*United States v Roy, supra,* at 110, quoting *Rakas v Illinois,* 439 US 128, 141, n 9; *see also, United States v Hunt,* 893 F2d 1028, 1032, n 6 [9th Cir], *mod on other grounds* 925 F2d 1181, *cert denied* 502 US 832; *State v Amos,* 153 Wis 2d 257, 450 NW2d 503; *People v Ycasa,* 140 Misc 2d 114).

In *United States v Roy (supra),* an escaped felon was found driving an automobile, and a search of the vehicle resulted in the discovery of evidence. The Second Circuit rejected the defendant's claim that he had standing to object to the search of the car, stating:

"[Defendant's] expectation of privacy in the automobile is not one that society is prepared to recognize as legitimate. In *Rakas v. Illinois,* the Supreme Court, citing *Jones v. United States,* 362 U.S. 257, 267, 80 S.Ct. 725, 734, 4 L.Ed.2d 697 (1960), explicitly noted that society did not recognize as reasonable the privacy rights of a defendant whose presence at the scene of the search was 'wrongful.' 439 U.S. at 141 n. 9, 99 S.Ct. at 429 n. 9. The Court noted two examples of persons who did not have legitimate expectations of privacy due to wrongful presence: a person present in a stolen automobile at the time of the search, *id.,* and '[a] burglar plying his trade in a summer cabin during the off season.' *Id.* at 143-44 n. 12, 99 S.Ct. at 430-31 n. 12.

"Roy's presence in Rocky Hill on December 3 was also wrongful, since he was an escapee from the MCC in Chicago. *See* 18 U.S.C. § 751 (1982) (inmate who escapes from federal custody commits a criminal act). At the time of the search and seizure, Roy was no more than a trespasser on society" (*United States v Roy, supra,* at 110-111).

In *State v Amos* (153 Wis 2d 257, 269, 450 NW2d 503, 507, *supra),* the court stated "[w]e agree with and adopt the view of the Second Circuit Court of Appeals that an escapee has no legitimate expectation of privacy in a residence where he or she is hiding from lawful authority" (*see also, Casey D.D. v State,* 174 Wis 2d 601, 501 NW2d 470 [unpublished opn]). Also, in *State v Hiott* (276 SC 72, 276 SE2d 163, *supra),* the court stated that prison escapees could not be considered to have been lawfully on the premises which was subject to a police search.

The defendant Angel Hernandez argues that he has standing to object to the search of his brother's apartment because his own carefully tailored testimony, which we will accept as true purely for the sake of argument, rather than because we agree with the Supreme Court that it is believable, establishes that he was an overnight guest *(see, Minnesota v Olson,* 495 US 91)*.* He then proceeds to argue, implicitly, that the "warrant of arrest" which the Supreme Court found the officers actually possessed was insufficient to justify their entry into his brother's apartment *(see, Steagald v United States, supra; cf., Payton v New York, supra)*.

In advancing this argument, what the defendant Angel Hernandez overlooks is the fact that none of the cited cases involves attempts by prisoners, escapees, parolees, or probationers to avail themselves of the exclusionary rule. Obviously, the Fourth Amendment rights of a person who is actually or constructively in the custody of the New York State Department of Correctional Services differ from those of citizens in general, or citizens under suspicion of criminal conduct in particular. Here, we are dealing with a convicted criminal who has absconded from the lawful custody of the State Department of Correctional Services. The cases relied upon by the respondent Angel Hernandez, and those relied upon by the Supreme Court *(see, Payton v New York, supra; Steagald v United States, supra; Minnesota v Olson, supra)*, are all distinguishable for this fundamental reason.

"[T]he legitimacy of certain privacy expectations vis-á-vis the State may depend upon the individual's legal relationship with the State. For example, in *Griffin [v Wisconsin* (483 US 868, 873, 875), the Supreme Court] held that, although a 'probationer's home, like anyone else's, is protected by the Fourth Amendmen[t],' the supervisory relationship between probationer and State justifies 'a degree of impingement upon [a probationer's] privacy that would not be constitutional if applied to the public at large'" *(Vernonia School Dist. 47J v Acton,* 515 US —, —, 115 S Ct 2386, 2391).

Although, as a general rule, police officers may not, in the absence of consent or exigent circumstances, effect a warrantless arrest of a suspect while the suspect is within the confines of his own home *(see, Payton v New York, supra),* this general rule does not apply with the same force to probationers or parolees, much less to escaped convicts. Under the Federal Constitution, it is clear that a parolee or a probationer may be arrested in his home without a judicial warrant *(e.g., United*

*States v Cardona,* 903 F2d 60 [1st Cir], *cert denied* 498 US 1049; *United States v Harper,* 928 F2d 894, 896 [9th Cir]; *People v Dyla,* 142 AD2d 423; *People v Diaz,* 163 Misc 2d 103, 108-109; *see also, State v Bass,* 595 So 2d 820 [La]; *State v Thompson,* 33 Ohio St 3d 1, 514 NE2d 407; *State v Maestas,* 815 P2d 1319 [Utah], *cert denied* 826 P2d 651; *Smith v State,* 1 Ark App 241, 614 SW2d 527). This rule applies with even more force in the case of an escaped convict, and, in our view, it applies under the New York Constitution as well as under the Federal Constitution.

In the present case, the officers had a type of warrant, based on the undeniable fact that Angel Hernandez had escaped from a work-release program. It is immaterial whether this warrant constituted the kind of warrant as is required under *Payton (supra),* because, as an escaped convict, the defendant has no protections under *Payton (see, People v Diaz, supra,* at 109; *United States v Harper, supra,* at 896; *Walrath v United States,* 830 F Supp 444, 446 [ND Ill]; *Smith v State, supra).*

Just as Angel Hernandez, as an escaped prisoner, has no protections under *Payton v New York (supra),* it follows a fortiori that he has no rights under *Steagald v United States (supra).* In other words, if the police needed no judicially sanctioned arrest warrant in order to effect a legal arrest of Angel Hernandez while he was inside Rudolfo Hernandez's apartment, it follows that they certainly did not need, in addition, a warrant to search the apartment. Angel Hernandez's argument that his arrest was illegal because the officers were not armed with *one* warrant is meritless for the reasons outlined above; his argument that the police needed *two* warrants in order to effect a legal arrest is completely specious.

In *Steagald (supra),* the Supreme Court held that a valid warrant for the arrest of one person may not serve as the basis for authorizing police to conduct an otherwise illegal search of the premises of a second person. As applied to the present case, *Steagald (supra)* precluded police officers from conducting an otherwise illegal search of Rudolfo Hernandez's premises based solely on the authority that they had authority to arrest Angel Hernandez. Thus, while the holding of *Steagald (supra)* might require the suppression of the evidence seized in the prosecution against Rudolfo Hernandez, it cannot possibly be applied so as to require the suppression of any evidence against Angel Hernandez. In other words, the holding of *Steagald (supra)* protects only the homeowner whose premises are searched, *not* the suspect who is legally arrested on the

homeowner's premises *(see, e.g., Commonwealth v Martin,* 423 Pa Super 228, 620 A2d 1194; *Commonwealth v Stanley,* 498 Pa 326, 446 A2d 583; *State v Flores,* 108 Idaho 914, 702 P2d 1374; *State v McKinney,* 49 Wash App 850, 746 P2d 835; *United States v McNeal,* 955 F2d 1067 [6th Cir], *cert denied* 505 US 1223). To hold otherwise would create the absurd situation in which a suspect or, as in this case, a fugitive, has greater rights in someone else's home than in his or her own home *(see, United States v Kaylor,* 877 F2d 658 [8th Cir], *cert denied* 493 US 871; *United States v Underwood,* 717 F2d 482 [9th Cir], *cert denied* 465 US 1036; *United States v Jones,* 696 F2d 479 [7th Cir], *cert denied* 462 US 1106; *United States v Clifford,* 664 F2d 1090 [8th Cir]; *United States v Buckner,* 717 F2d 297 [6th Cir]; *State v O'Dell,* 576 A2d 425 [RI]; *see also,* Mascolo, *Arrest Warrants and Search Warrants in the Home: Payton v. New York Revisited and Modified Under State Constitutional Law,* 66 Conn BJ 333 [1992]).

For these reasons, we conclude that the officers legally entered into Rudolfo Hernandez's apartment in order to arrest Angel Hernandez pursuant to the detainer. The contraband which was seized on the first floor was in the plain view of officers who were, at the time, lawfully in the position from which the contraband was visible. This contraband was therefore lawfully seized pursuant to the "plain view" exception to the warrant requirement, and would be admissible in the prosecution of Angel Hernandez, even assuming he had standing *(see, People v Spinelli,* 35 NY2d 77; *People v Aqudelo,* 150 AD2d 284).

With respect to Rudolfo Hernandez, we conclude that the search of the apartment cannot be justified in the absence of a search warrant, in the absence of consent, and in the absence of exigent circumstances *(see, Steagald v United States, supra).* Because we do not agree with the People that the search of Rudolfo Hernandez's apartment can be justified on the theory that there existed exigent circumstances, we affirm only so much of the Supreme Court's order as granted Rudolfo Hernandez's motion to suppress. The officers' entry into the apartment was illegal as to Rudolfo, and suppression is required only to the extent necessary to protect his privacy rights *(see, Steagald v United States, supra).*

Accordingly, the order appealed from is modified to deny that branch of the motion of the defendant Angel Hernandez which was to suppress physical evidence.

ROSENBLATT, SANTUCCI and JOY, JJ., concur.

Ordered that the order is modified, on the law, by deleting the provision thereof which granted that branch of the omnibus motion of the defendant Angel Hernandez which was to suppress physical evidence, and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed, and the matter is remitted to the Supreme Court, Queens County, for further proceedings on the indictment.