*530 OPINION OF THE COURT
Susan I. Kettner, J.
The People move for leave to reargue this court’s decision and order, dated March 23, 2012 (35 Misc 3d 1201 [A], 2012 NY Slip Op 50528[U] [2012]), which suppressed the defendant’s statement upon a finding of two defective Miranda warnings. In the present motion, the People ask the court to reconsider its prior decision and deny the defendant’s motion to suppress the defendant’s statement.
Background
Defendant stands charged with the following offenses: obstructing governmental administration in the second degree, a violation of Penal Law § 195.05; and harassment in the second degree — physical contact, a violation of Penal Law § 240.26 (1). This court held a Huntley hearing on February 23, 2012 and found that the defendant’s statement made during the course of a court-ordered anger management program must be suppressed as the defendant was given two defective Miranda warnings, which failed to advise him that anything he said would be used “against him” in a court of law.[1]
Legal Analysis
The People’s motion for reargument advances a dually-faceted argument: that the omission of the words “against you” is a minor and inconsequential deviation; and that based upon the totality of the circumstances, the “defendant could not have possibly interpreted the Miranda warnings in any other way, aside from the way in which these warnings were intended,” to place him on notice (People’s affirmation at 2). The People also cite the following factors to buttress their argument: the facts that the warnings were given twice (albeit, in the same, incomplete truncated fashion) and that the defendant was familiar with the court system, as this was not his first interac *531 tion with the criminal justice system. Defendant argues that he was given inadequate warnings in violation of his constitutional rights and, therefore, the statement must be suppressed. Specifically, the defendant argues that the warnings were both insufficient insofar as the defendant was never notified that any statement he made would be used against him.
As pointed out in People v Huntley (15 NY2d 72, 78 [1965]), the People bear the burden of proving the voluntariness of the defendant’s statements beyond a reasonable doubt. The testimony clearly established that Detective Carpano issued the truncated Miranda warnings twice, leaving out the words that the defendant’s statement would be used “against him.” Defendant’s statement, which is the subject of the suppression hearing, contained incriminating and exculpatory elements. The statement was made after he acknowledged to the detective that he understood his rights (as stated to him) and did not request an attorney or avail himself of the opportunity to make a phone call.
While this court fully acknowledges that Miranda warnings need not be read or recited verbatim (California v Prysock, 453 US 355 [1981]), nor does the court “need [to] examine Miranda warnings as if construing a will or defining the terms of an easement” (Duckworth v Eagan, 492 US 195, 203 [1989]), the Fifth Amendment of the United States Constitution affords a citizen the right to be informed, prior to custodial interrogation, that
“he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires” (Miranda v Arizona, 384 US 436, 479 [1966] [emphasis added]).
The analysis for reviewing courts is whether the warnings that were administered reasonably conveyed to the suspect the rights required by Miranda (Prysock). No “talismanic incantation” is required to satisfy the warnings required by Miranda (Prysock at 359). The language used in the Miranda decision or the “fully effective equivalent” are prerequisites to the admissibility of any statement made by a suspect pursuant to a custodial interrogation (Miranda at 476). So, the issues before the court again are whether the abbreviated Miranda warnings administered by the detective in this case constitute a “fully effective equiva *532 lent” of the language used in the Miranda decision and whether, based upon the totality of the circumstances, the People have proved the voluntariness of the statement sought to be suppressed beyond a reasonable doubt.
Virtually every single case cited by the People in support of their motion deals with that prong of the Miranda warnings pertaining to the right of an accused to have an attorney present during interrogation.[2] Of the remaining cases cited, the records are completely devoid of the factual basis of the challenged warning.[3] The People have not cited one case standing for the proposition that omitting the words “against you” in a Miranda warning is acceptable or constitutes a “fully effective equivalent” of the language required by the Miranda Court. We question whether there can be a voluntary, knowing and intelligent waiver of a privilege or a right where a suspect is not fully informed of the consequences of forgoing it. As there are no cases on this point dealing with this specific prong of the Miranda warning, we defer to the original Miranda Court for the underlying rationale of the critical importance of this prong of the warning — that prong which advises the individual of the consequences of waiving the privilege against self-incrimination:
“The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. This warning is needed in order to make him aware not only of the privilege, but also of the consequences of forgoing it” (Miranda at 469 [emphasis added]).
The Court further underlined the importance of this prong of the warning because it serves to “make the individual more acutely aware that he is faced with a phase of the adversary system — that he is not in the presence of persons acting solely in his interest” (Miranda at 469).
The People argue that “the defendant could not have possibly interpreted the Miranda warnings in any other way, aside from the way in which these warnings were intended,” and that looking at the “totality of the circumstances . . . [t]hese warnings *533 given to the defendant, twice, adequately advised the defendant of the consequence of speaking to the police” (People’s affirmation at 2). We disagree.
As previously stated, the People have the burden to prove beyond a reasonable doubt the voluntariness of the defendant’s statement (People v Huntley). The circumstances cited by the People do not meet this burden. The People’s assertion that “this defendant was aware that he was facing criminal charges in relation to this incident and that he of course understood that warnings to mean that [sic] the possibility of anything he elected to say could be used against him” (People’s affirmation at 3) is not supported by the weight of the evidence. The court is troubled by the fact that the defendant volunteered a statement that was simultaneously inculpatory and exculpatory. Without a clear warning that his statement would be used “against him,” it could equally be inferred that the defendant’s statement merely constituted an offer of exculpatory information made in reliance upon a defective and arguably misleading warning. The court notes that the statement sought to be suppressed was made by defendant during court-ordered anger management treatment. The defendant knew or had reason to believe that reports were being generated and would be made available to the court and that Detective Carpano may have already known about the contents of the statement.[4] The defendant may have made the statement to the detective only to show his lack of intent to carry out the threat and for no other purpose. Without being clearly advised on at least one occasion of the consequences of making a statement and how that statement would be used, it is simply unclear to the court whether this defendant would have said anything had he been appropriately advised.
Likewise, the People’s argument that the defendant had prior contact with the criminal justice system and was thus aware of the procedural safeguards, citing People v Diaz (163 Misc 2d 103 [1994]), is unavailing. In Diaz, the court noted that the defendant had been “arrested several times before for various felonies, and thus is familiar with the criminal justice system” (at 111). In the case before us, a review of the defendant’s “rap sheet” reveals that his only prior contact with the criminal justice system occurred 2V2 months earlier, when defendant was arrested for the first time, at the age of 74. This hardly represents *534 someone who is conversant with the procedural safeguards of the criminal justice system. The fact that the detective twice administered the same defective truncated warning makes no difference. The defendant was entitled to be fully warned of the consequences of forgoing the right to remain silent. He was not advised of the consequence that his statement would be used “against him” in a court of law.
“As with the warnings of the right to remain silent and that anything stated can be used in evidence against him, this warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead” (Miranda at 471-472 [emphasis added]).
Cases that have upheld the voluntariness of statements made following a defective or incomplete Miranda warning, where, as here, more than one warning was given, are distinguishable from the case before this court. As differentiated from the case at bar, the courts deciding those cases have found that at least one full and complete Miranda warning was given and that the “defective” warning was superfluous, at best (People v Gonzalez, 150 Misc 2d 187 [1991]; People v Jordan, 110 AD2d 855 [1985]; People v Roberts, 178 AD2d 622 [1991]).[5] In the case at bar, the detective credibly testified that he recited the incomplete Miranda warnings twice, in exactly the same manner, deleting the operative words that would place the defendant on notice that not only would his statement be used in a court of law, but specifically, that his statement would be used against him.
Based upon the evidence before the court and the law, the court finds the truncated warning incomplete and defective because the defendant was neither adequately warned that his statement would be used against him in court nor was he put on adequate notice of the adversarial nature of the questioning. Additionally, reviewing all of the evidence constituting the *535 “totality of the circumstances,” we cannot be certain beyond a reasonable doubt that this defendant made a voluntary, knowing and intelligent waiver of his constitutional right to be free from self-incrimination. For all of the foregoing reasons, the statement must be suppressed.
Accordingly, the People’s motion is denied.

. Specifically, the following warning was issued,
“I am Detective Carpano with the New Rochelle Police Department and you are being charged with the commission of this crime. You have the right to remain silent. Anything you say can and will be used in a court of law. You have the right to an attorney and have an attorney present during questioning. Should you not be able to afford an attorney, one will be appointed to you free of charge. You also have the right to make three phone calls. Do you understand these rights as I have explained them to you?”

. People v Vega, 225 AD2d 890 (1996); California v Prysock, 453 US 355 (1981); Duckworth v Egan, 492 US 195 (1989); People v Bartlett, 191 AD2d 574 (1993); People v Handley, 85 AD2d 910 (1981); People v Diaz, 163 Misc 2d 103 (1994).

. People v Diplan, 180 Misc 2d 294 (1999); People v Evans, 162 AD2d 702 (1990); People v A.J., 11 Misc 3d 1073(A), 2005 NY Slip Op 52288(U) (2005); People v Davila, 27 Misc 3d 921 (2010); People v Parker, 258 AD2d 479 (1999).

. Detective Carpano testified that no one other than the defendant was a suspect.

. The Gonzalez court, in dealing with the same prong of the Miranda warning, found that there was one valid and complete Miranda warning given to the defendant. While not necessary, the Gonzalez record also evidenced that the one complete Miranda warning was administered in the nature of a voir dire, whereby the defendant was asked after each separate prong of the warning whether he understood. Finally, the Gonzalez court noted that the defendant displayed a calm demeanor. In the case before us, there were two truncated warnings, both warnings failing to fully advise the defendant how the defendant’s statement would be used. In addition, Detective Carpano testified that although the defendant was not in any physical distress, the defendant did appear agitated.