OPINION OF THE COURT
Meyer, J.
A child abuse or neglect proceeding under article 10 of the Family Court Act is a civil proceeding for the protection of the child alleged to be abused or neglected. Notwithstanding the requirement of section 262 of the Family Court Act that when the person named in such a petition first appears in court the Judge shall before proceeding advise him or her of the right to counsel, the filing of such a petition is neither the initiation of a criminal proceeding nor such significant judicial activity in relation to a criminal proceeding as will trigger the person’s right to counsel with respect to a criminal charge arising from the same facts. When interrogated by police investigating the potential criminal charges, such a person may waive the right to counsel in the absence of counsel, provided that Miranda warnings, if required by the circumstances of the interrogation, are properly given and that the person has not in fact retained counsel in relation to the neglect proceeding. The order of the County Court should, therefore, be affirmed.
I
On October 19, 1982, Donald Corey, stepson of defendant, Roger Smith, and son of Sarah Smith, was removed from the Smith home under an order signed by a Judge of the Family Court, Onondaga County, and placed in the temporary custody of the Department of Social Services, Children’s Division, a child protective agency of the State. The order appears to have been based upon a visit to the Smith home by persons from the Child Protection Division and a policeman on October 18,1982, during which bruises were observed on Donald’s buttocks. On October 20, 1982, a summons was issued requiring Roger Smith to show cause in Family Court on October 27, 1982 why Donald should not be adjudicated a neglected child and Roger *310 Smith should not be dealt with in accordance with article 10 of the Family Court Act, and a neglect petition was filed alleging that Roger Smith had beaten Donald Corey on and about the buttocks, with his hand and a belt, causing numerous bruises. On October 21,1982, Investigator Scott Dunseath of the Syracuse Police Department’s Child Abuse Unit, having been called to the foster home in which Donald had been placed by Child Protective Services, first interviewed Donald and then proceeded to the Smith home.
Roger Smith not being at home, Investigator Dunseath left his card. Before returning Dunseath’s call, Smith called Carolina Miccio, a family counselor in the employ of the county (but having no relation with the Family Court or the Police Department), with whom both parents had previously consulted. Ms. Miccio was present during Officer Dunseath’s interview of Roger Smith and testified that she had told him to tell the truth and went over the statement with him to be sure he understood it. Although Smith was not then in custody, Miranda warnings were administered and he stated that he understood them and was willing to make a statement without an attorney. A statement was then taken by Dunseath in affidavit form, signed by Smith and witnessed by Miccio, in which Smith admitted that on October 13, 1982, he had spanked Donald because he wet himself, but did not think he had done so hard enough to cause bruises, although he admitted seeing a bruise like a handprint on Donald’s buttocks on October 18. After making the statement Smith was charged with assault, third degree, and served with an appearance ticket returnable in the Criminal Division of Syracuse City Court on October 28, 1982.
After a hearing on Smith’s motion to suppress, City Court found the statement to have been made voluntarily but nevertheless granted the motion to suppress, holding the Family Court proceeding and the criminal investigation and charge so interrelated that defendant Smith could not be questioned without counsel once the “accusatory step” of the Family Court proceeding had been taken.
On appeal to the County Court, that court agreed that the statement had been voluntarily made, but reversed on the law and the facts and remitted the matter for trial. It *311 held that the Family Court proceeding being civil in nature, the criminal proceeding not having commenced at the time Smith was questioned, Smith not having at that time obtained counsel in the Family Court proceeding, and Miranda warnings having been administered and understood, there was no violation of defendant Smith’s right to counsel. The matter is before us by leave of a Judge of this court. We agree with County Court that there was no violation of Smith’s right to counsel and, therefore, affirm its order.
II
Indelibly clear from the provisions of article 10 of the Family Court Act are the separate and civil nature of proceedings under that article. Section 1011 declares the purpose of the article to be “to establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being” as well as to determine “when the state, through its family court, may intervene against the wishes of a parent on behalf of a child so that his needs are properly met” (Emphasis supplied.) Subdivision (b) of section 1013 declares that, “For the protection of children, the family court has jurisdiction over proceedings under this article notwithstanding the fact that a criminal court also has or may be exercising jurisdiction over the facts alleged in the petition or complaint.” Subdivisions (a) and (b) of section 1014 permit the transfer of a Family Court proceeding to an appropriate criminal court and the transfer of a criminal complaint to the Family Court, subdivision (c) of that section states explicitly that, “Nothing in this article shall be interpreted to preclude concurrent proceedings in the family court and a criminal court”, and subdivision (d) permits the Family Court in a hearing under the section to grant only use immunity to the respondent or potential respondent (see Matter of Vance A., 105 Misc 2d 254), rather than the transactional immunity which under CPL article 50 may be granted by the court in a criminal proceeding.[1]
*312 The recognition in section 262 of the Family Court Act of the right to counsel of the respondent in an article 10 proceeding does not alter the situation. It is, rather, a recognition that due process and equal protection require the assistance of counsel when rights and interests as fundamental as those involved in the parent-child relationship are at stake (Matter of Ella B., 30 NY2d 352, 356-357). True, both the opinion in Ella B. (id., at p 356) and section 261 of the Family Court Act refer to “the possibility of criminal charges,” but section 262 speaks only to the right to counsel in Family Court proceedings and, although the right to assignment of counsel recognized in Ella B. has since January 1, 1976 been incorporated in its provisions, nothing in it, or elsewhere in the Family Court Act, suggests a legislative intent to impose a statutory requirement that counsel be provided prior to respondent’s appearance in the Family Court proceeding or to affect the investigatory process related to criminal charges arising out of the same facts.
Ill
Defendant fares no better when the matter is examined in light of the right to counsel contained in section 8 of article I of the State Constitution. He does not contend that he did not receive or understand Miranda warnings.[2] Both courts below have, moreover, found his statement to have been given voluntarily, which puts that issue beyond our review, there being support in the record for such a finding (People v Hopkins, 58 NY2d 1079). His rights under our Constitution have not been violated, therefore, unless when the statement was taken his right to counsel in the criminal proceeding had attached and could not be waived in the absence of counsel.
Although Investigator Dunseath concededly was aware of the Family Court proceeding at the time he took defendant’s statement, it is also conceded by defendant that at that time he had not appeared at Family Court and had no attorney, retained or assigned, in relation to that proceeding. This is not a matter, therefore, such as People v *313 Skinner (52 NY2d 24) and People v Steele (113 Misc 2d 658) in which the police questioned a suspect not in custody about an investigation in relation to which the police were aware that he had counsel. It is, rather, closer to People v Kazmarick (52 NY2d 322) in which we held that police knowledge of a pending separate proceeding against the person questioned cannot charge them with any more information than would have been revealed had the police made reasonable inquiry concerning whether the person in fact had counsel on the separate charge.
Defendant would distinguish Kazmarick, as did the City Court Judge, on the ground that it concerned an unrelated charge, whereas in the present case the criminal charge and the Family Court proceeding arise from the same facts and are not only related but “inextricably interwoven.” The quoted phrase comes from People v Townes (41 NY2d 97, 104), which involved a defendant interviewed in a detention facility where he was being held on a criminal charge on which he had been arraigned and indicted and for which he had been assigned counsel. The related proceeding there involved was defendant’s police brutality complaint to the Civilian Complaint Review Board, as to which defendant was interviewed by a police officer assigned to investigate such complaints. There is similarity between that case and this only in that each concerns related criminal and civil proceedings. In all other respects the situations differ. In Townes the statement, although it necessarily involved discussion of the crime with which defendant was charged, was taken in the civil proceeding. It was taken, moreover, after the police were aware that defendant had been arraigned and had an attorney in the criminal proceeding, sufficiently so that the interviewing officer advised defendant of his constitutional rights even though it was his voluntary complaint in the disciplinary proceeding on which his statement was being taken. Here, defendant had no attorney in either proceeding and had only been served with a summons and petition in the civil proceeding when the officer investigating the criminal charge asked to interview him and obtained affirmative responses to Miranda warnings before conducting the interview. The statement taken, thus, would not have been *314 suppressible had no Family Court proceeding been begun at the time Investigator Dunseath took it. That the Family Court summons and petition had been served when the statement was taken, whatever its effect, if any, upon use of the statement in the Family Court proceeding, should not proscribe its use in the criminal proceeding simply because both proceedings arose from the same factual situation.
Nor is there basis for such proscription in the reasoning upon which our prior right to counsel opinions have been based. True, we have held that the right to counsel attaches when there has been significant judicial activity, even though that activity precedes the formal commencement of criminal prosecution (People v Coleman, 43 NY2d 222 [order requiring a person’s appearance in a lineup];[3] People v Sugden, 35 NY2d 453 [order authorizing the taking of a person, incarcerated for an unrelated crime, to the scene of a crime]). But those cases as well as those involving more formal procedures such as the filing of a felony complaint (People v Samuels, 49 NY2d 218) or an indictment (People v Blake, 35 NY2d 331) have all concerned “ ‘adversary judicial criminal proceedings’ ” (People v Blake, supra, at p 340, quoting from Kirby v Illinois, 406 US 682, 689 [emphasis supplied]). Defendant points to none, and we have found none, holding that judicial activity civil in nature triggers the right to counsel.
The situation is no different if we assume that defendant’s right to counsel had attached by reason of the Family Court proceeding, for there is a clear distinction between cases in which by reason of the commencement of formal criminal proceedings a defendant’s right to counsel has “indelibly attached” and can be waived only in the presence or with the concurrence of counsel (People v Yut Wai Tom, 53 NY2d 44; People v Samuels, 49 NY2d 218, 222, supra; People v Rogers, 48 NY2d 167; People v Settles, 46 NY2d 154) and those in which significant judicial *315 activity prior to formal commencement of a criminal proceeding establishes a right to counsel which may be waived in the absence of counsel retained with respect to an unrelated charge, provided only the waiver is voluntarily and intelligently made (People v Coleman, 43 NY2d 222, supra; see People v Samuels, 49 NY2d 218, 222, supra; People v Settles, 46 NY2d 154, 166, supra; People v Lloyd Winston G., 45 NY2d 962, 964, n). The distinction turns on the conception that the presence of counsel in the unrelated proceeding does not immunize a suspect from investigation of other criminal activity, as to which he, being unrepresented and not yet formally charged, can waive his right to counsel without the presence or concurrence of counsel (People v Coleman, 43 NY2d, at pp 226-227; People v Samuels, 49 NY2d, at p 222; People v Settles, 46 NY2d, at pp 165-166).
Defendant would distinguish the Coleman line of cases on the ground that the Family Court proceeding and the criminal assault charge are related, being based upon the same facts. Recognizing the factual relationship, we nevertheless conclude that the Coleman rationale applies. Not only is the Family Court proceeding civil in nature and one in which defendant’s statutory right to counsel had not matured by the appointment of counsel when he was interrogated on the criminal charge, but also the two proceedings have wholly different purposes. The Family Court proceeding seeks to protect the infant from future abuse by removing him or her from the parental home; the criminal action, to punish the parent for abuse inflicted in the past. It would unduly limit the investigatory function of the police with respect to a potential criminal charge of child abuse to hold that the parent’s right to counsel on the criminal charge indelibly attaches upon service of the Family Court petition. This is not a situation in which the People have used interrogation in the Family Court proceeding impermissibly to extract admissions concerning the criminal proceeding (cf. People v Miller, 54 NY2d 616; People v Ermo, 47 NY2d 863) or interrogated defendant in the criminal proceeding at a stage of that proceeding or in a manner which infringes his constitutional right to counsel (People v Wilson, 56 NY2d 692). The policy considerations involved in the prompt commencement of Family *316 Court proceedings for the protection of an allegedly abused infant while not unduly restricting the investigation of the possible criminal charge militate against acceptance of the rule for which defendant contends (cf. People v Hawkins, 55 NY2d 474).
For the foregoing reasons, the order of the County Court should be affirmed.
Chief Judge Cooke and Judges Jasen, Jones, Wacht-ler, Simons and Kaye concur.
Order affirmed.

. Lower courts that have considered the question in other contexts have held article 10 proceedings of the Family Court Act to be civil in nature (Matter of Patricia P., 117 Misc 2d 826; Matter of Diane B., 96 Misc 2d 798; see Matter of Maureen G., 103 Misc 2d 109; cf. People v Steele, 113 Misc 2d 658).

. The giving of Miranda warnings was apparently an excess of caution on Dun-seath’s part, for defendant was not then in custody (see People v Rowell, 59 NY2d 727; Matter of Kwok T., 43 NY2d 213; People v Rodney P., 21 NY2d 1).

. The importance of the order is underscored by our later holding in People v Hawkins (55 NY2d 474) that the presence of counsel is not required at an investigatory lineup even though the suspect requests counsel and that a lineup need not necessarily be delayed for the presence of counsel even though the authorities are aware that the suspect has counsel.