*723 OPINION OF THE COURT
Minna R. Buck, J.
By petition filed February 19, 1986, petitioner alleged that the child Tammy L. was abused by respondent Jerry L. (hereinafter stepfather), and neglected by respondent Marilyn L. (hereinafter mother). A hearing was commenced on June 17, 1986 and concluded June 24, 1986; the court reserved decision, pending submission of memoranda of law by counsel. After reviewing the record and the arguments of counsel, the court now makes the following findings:
1. Tammy L. is a child under the age of 18, having been born on March 20, 1970. Respondent Marilyn L. is her mother and respondent Jerry L. is a person legally responsible as defined in Family Court Act § 1012 (g).
2. A preponderance of the credible evidence establishes that stepfather had sexual contact with the child, consisting of hand-to-vagina contact, on at least one occasion during late November 1985. The evidence consisted of the out-of-court statements of the child, as related by the school nurse and a police investigator, and the child’s direct testimony, to the effect that she was awakened from a nap on the living room couch, in her mother’s apartment, to find her jeans and underpants pulled down to her knees, and respondent kneeling alongside with his finger in her vagina. The credibility of the child’s statements both in and out of court was not undermined either by her apparent confusion about dates of other alleged incidents or the child’s freely admitted peccadillos such as smoking in school or lying to her sister. Moreover, stepfather’s failure to testify or offer any proof to rebut petitioner’s evidence permits the drawing of any inference against him that is warranted by the record (Richardson, Evidence § 92 [Prince 10th ed]).
The court is mindful that the drawing of such an inference in a Family Court Act article 10 proceeding exposes stepfather to serious consequences. Nevertheless, the Court of Appeals has repeatedly affirmed that article 10 proceedings are civil, and not criminal, in nature (People v Smith, 62 NY2d 306, 309). Even though the drawing of such an inference would not be constitutionally permitted in a criminal proceeding, that does not constrain this court from drawing the "strongest inference against [respondent] that the opposing evidence in the record permits” (Matter of Commissioner of Social Servs. v Philip De G., 59 NY2d 137, 141, citing Noce v Kaufman, 2 NY2d 347, 353).
*724 The Philip De G. case is instructive. There, the Court of Appeals held that the statutory prohibition against compelling a respondent in a paternity proceeding under Family Court Act article 5 (§ 531) to testify did not rule out the drawing of an inference because of the respondent’s failure to do so: "it is now established that in civil proceedings an inference may be drawn * * * because of his failure to testify * * * whether the privilege is constitutional * * * or statutory” (59 NY2d, at p 141). Such an inference being permitted where the required quantum of proof is "clear and convincing” evidence which is "entirely satisfactory” (Matter of Commissioner of Social Servs. v Philip De G., supra; Matter of Piccola v Hibbard, 51 AD2d 674, affd 40 NY2d 1035) a fortiori it is permissible in an article 10 proceeding, in which the quantum of proof is "preponderance of the evidence” (Family Ct Act § 1046 [b]; Matter of Tammie Z., 66 NY2d 1) and there is no statutory privilege not to testify. The court has taken note of the pending criminal proceeding against respondent stepfather arising out of the same incident, but relies on the reasoning in Matter of Diane P. (110 AD2d 354) in drawing an inference against him for purposes of the instant proceeding. In that case, the court allowed the use in an article 10 proceeding of relevant evidence seized during an illegal search, after balancing the interests involved and noting that this "would have no impact upon a related criminal prosecution because * * * normal application of the [applicable] rule would in any event preclude use of that evidence in the criminal prosecution.” (Supra, at p 358.)
The court finds that the sexual contact established herein would constitute sexual abuse in the third degree as defined in Penal Law § 130.55, and therefore that stepfather did abuse the child (Family Ct Act § 1012 [e] [iii]).
3. A preponderance of the credible evidence establishes that mother knew, or should have known, that the child was at risk of abuse by stepfather. The evidence consisted of the child’s out-of-court statements as related by the school nurse and the police investigator, that she had told her mother of stepfather’s approaches to her. The child testified in court that she had told her mother on two different occasions that stepfather had "messed with her”; mother’s own statement to the police investigator as well as her in-court testimony corroborated the child’s testimony almost verbatim. These disclosures were made during 1985, prior to the incident of sexual abuse referred to above. Although both mother and daughter *725 were unclear about the precise dates of these disclosures, on this record, there can be no doubt that these conversations occurred. Mother’s response to the child’s disclosures was "stay away from him — he’s just trying to be smart”. Neither mother nor child pursued the discussion further on either occasion. Mother did not inquire what "messing with her” meant, but her testimony revealed that she understood this to refer, at the least, to attempted sexual contact by the stepfather. Mother’s testimony contradicted her previous sworn statement to the police investigator, to the effect that she had never discussed the disclosures with stepfather. Under cross-examination, she acknowledged that she had asked stepfather "did you try to 'get smart’ with Tammy”, but accepted his denial, without further discussion with him or the child; when asked why she even asked respondent about the conversation, in light of her explanation, mother said she "thought maybe 'something’ had happened”. Based on the testimony and demeanor of mother, as well as the record as a whole, the court finds that mother failed to exercise a minimum degree of care in providing proper supervision for the child, as a result of which the child was subjected to sexual abuse, and her physical, mental or emotional condition is in imminent danger of becoming impaired thereby (Family Ct Act § 1012 [fj [i] [B]).
Accordingly, the Probation Department is hereby directed to conduct a social investigation and present their report to the court on August 27, 1986 at 9:30 a.m.