OPINION OF THE COURT
Richard T. Andrias, J.
In September 1989 defendant Judith Goldfinger was charged in a five-count indictment with conspiracy in the fifth degree, *766 grand larceny in the second degree, criminal possession of stolen property in the second degree, commercial bribing in the first degree and perjury in the third degree. In essence, it is alleged that Ms. Goldfinger, who sells commercial business forms for her employer, codefendant Cosmos Forms, Ltd. (Cosmos), conspired and schemed to defraud one of her corporate customers, Guardian Life Insurance Co. (Guardian), by inflating invoices for goods sold and delivered in 1987 and 1988.
In March of 1989 certain statements made by Ms. Gold-finger to her alleged coconspirator, Lorraine Calderazzo, an employee of Guardian, were surreptitiously tape recorded by Ms. Calderazzo at the behest of a New York County Assistant District Attorney who had been contacted by Guardian about the alleged scheme. While no formal criminal proceedings had been initiated at the time the statements were made, the very wrongs alleged in the present indictment were the subject of an ongoing Federal civil lawsuit instituted October 1988 in the Eastern District of New York. Goldfinger retained an attorney in or about February 1989 to defend her in these actions.
The defendant moves pursuant to CPL 60.45 to suppress the statements recorded by her coconspirator as violative of her New York State constitutional right to counsel (NY Const, art I, § 6). While she concedes the New York County matter was in the investigative stages and that she was not in custody when questioned, she contends that she had retained an attorney to defend her against the Federal claims, which involved the same transactions and the same allegations as now appear on the New York County indictment. She alleges further that the District Attorney knew she was represented by counsel and knew of the precise nature of the Federal claims and thus was barred from questioning her about these past events without her lawyer being present or without her waiving her right to counsel in his presence.
The District Attorney does not dispute that the coconspirator was acting as an agent of the District Attorney’s office and that it knew that the defendant had retained an attorney on the Federal civil matter. However, it argues here, inter alla, that the matter was merely under investigation with no formal charges pending. Thus, having retained an attorney in a separate civil proceeding in which the prosecutor was not involved should not bar the questioning of a suspect in a criminal investigation, even one involving the same or substantially the same allegations asserted in the civil suit.
*767 No hearing is required because the facts necessary to the court’s decision are undisputed. The Federal pleadings and various correspondence have been appended to the parties’ motion papers. There is substantial agreement about the accuracy of the transcripts of the taped telephone and face-to-face conversations of March 13 and 14, 1989, respectively. The People’s voluntary disclosure form (VDF) admits that the coconspirator, Ms. Lorraine Calderazzo, was acting as an agent of the District Attorney when taping the conversations with the defendant. Finally, at a premotion conference on November 21, 1990, the Assistant District Attorney conceded that she knew of the nature of the Federal suits and that the defendant was represented by counsel in those matters.
FACTS
As early as June 1988, even before the commencement of the civil action, Guardian’s attorney had contacted the New York County District Attorney’s office regarding the possibility of initiating a criminal action against Judith Goldfinger and Cosmos. During this investigation the Assistant District Attorney contacted Lorraine Calderazzo, the alleged coconspirator, to seek her cooperation in the investigation of Ms. Goldfinger and Cosmos.
In October 1988 Cosmos commenced a civil action against Guardian in the United States District Court for the Eastern District of New York, claiming violations under the Racketeer Influenced and Corrupt Organizations Act (18 USC § 1961) otherwise known as RICO. Cosmos alleged that Guardian had engaged in a pattern of racketeering activity, fraud, conversion and breach of contract in failing to pay for merchandise sold and delivered by Cosmos during the period 1987 and 1988. In November and December 1988 Guardian interposed a defense and counterclaim alleging RICO violations against Cosmos and Judith Goldfinger personally. In these claims, they alleged that Goldfinger and Israel Braun (another employee of Cosmos), acting personally and as agents for Cosmos, conspired with Lorraine Calderazzo, a former Guardian purchasing agent, to defraud Guardian. In December of 1989 Guardian also repeated the same claims in an independent Federal action against defendant Goldfinger and Israel Braun. Ms. Goldfinger retained an attorney to defend her against these claims in or about February 1989. In September 1989 a New York County Grand Jury indicted the defendant. The *768 crimes charged are essentially the wrongs described in the pleadings of the Federal civil action: that the defendant conspired with Lorraine Calderazzo to commit fraud and larceny by submitting inflated invoices for products sold and by altering billing data to conform to the inflated invoices.
On March 13, 1989, Ms. Calderazzo telephoned Ms. Gold-finger about their prior dealings. Ms. Calderazzo told Ms. Goldfinger that she had been contacted by the District Attorney’s office about the invoices in question and implored Ms. Goldfinger to help her in the matter. Ms. Goldfinger told Ms. Calderazzo that the matter was being litigated in Federal court and discussed the advice her lawyer had given her. This telephone conversation and a subsequent face-to-face conversation between the two women on the following day, March 14, 1989, were recorded by the District Attorney’s office with the consent of Ms. Calderazzo who in the second instance was wearing a concealed microphone. During this conversation, Ms. Goldfinger analyzed why the allegations of fraud were untrue and advised Ms. Calderazzo not to speak to the Assistant District Attorney without an attorney. These conversations, which are the subject of this motion, were subsequently presented as evidence to the Grand Jury which indicted the defendant.
CONCLUSIONS OF LAW
Does New York State’s right to counsel protect a person who is the subject of an investigation into possible criminal wrongdoing from being questioned about such wrongdoing by an agent of the prosecutor out of the presence of the person’s lawyer known by the prosecutor to have been retained in an ongoing civil lawsuit involving the same allegations of wrongdoing?
As was discussed by the Court of Appeals in the recent case of People v Bing (76 NY2d 331 [1990]), traditionally New York’s right to counsel "indelibly” attaches and cannot be waived in the absence of counsel (i) when formal proceedings have commenced or (ii) where uncharged individuals are in custody and have retained or requested an attorney. In either instance, "[p]olice authorities may not question [the individuals] in the absence of counsel” (People v Bing, at 339). New York has further provided that even if the defendant has not been formally charged and is not in custody, where "a defendant is known to have invoked the right to and obtained the *769 services of counsel on the matter about which the person is questioned, the State may not use the statements elicited from that person in the absence of a waiver of counsel made in the presence of the attorney”. (People v Skinner, 52 NY2d 24, 32 [1980] [emphasis supplied].)
In Skinner (supra), police conducting a homicide investigation focused on the defendant as the prime suspect and questioned him a number of times. As a result, the defendant retained an attorney who requested that the authorities not question his client without him being present. Aware that the defendant had retained an attorney, two police officers nevertheless personally served the defendant with an order to appear in a lineup in the homicide investigation. Defendant became upset when he received the order, and one of the detectives seized the opportunity to question him. After receiving his Miranda warnings, the defendant then made damaging admissions which the People sought to use at trial. The Court of Appeals reversed the Appellate Division and suppressed these statements.
In analyzing the matter before this court, it is important to note that the Skinner decision (supra) was founded upon defendant’s "invocation” of the right to counsel while in a noncustodial setting, not the conduct of the police or prosecutor. "The motivations of the police in conducting the interrogation are immaterial, for the impact on the right to counsel is the same.” (People v Skinner, 52 NY2d, at 32, supra.) Defendant Goldfinger clearly invoked her right to counsel by retaining a lawyer to defend her against the serious wrongdoing alleged. Her words to her alleged coconspirator, Lorraine Calderazzo, make it clear that she knew precisely why she had an attorney: "You should never talk to them, only to a lawyer. If you want to, you call the lawyer. The lawyer will speak to them * * *. Because a lawyer will say you are not allowed to speak to my client, then the lawyer is going to be with you all the time.”
The People argue that the defendant’s right to counsel did not attach merely because she was represented by an attorney in a civil proceeding, albeit one involving the same subject matter. The People contend that People v Smith (62 NY2d 306 [1984]) is controlling here. Smith found that a Family Court neglect proceeding was civil in nature, even though it involved the same transgressions alleged in a subsequent criminal prosecution. The defense argues that People v Steele (113 Misc 2d 658 [Sup Ct, NY County 1982]), which suppressed *770 statements after finding that a criminal investigation and prosecution was the natural outgrowth of an administrative hearing (and which has been cited by the Court of Appeals with apparent approval) is controlling. Smith, which is discussed at length below, is inapposite to the facts at hand. Steele, while a learned opinion, has been undercut by its reliance on the recently overturned People v Bartolomeo (53 NY2d 225 [1981]). Ultimately the conclusions of law contained herein are founded on clearly established principals of law found elsewhere.
In Smith (supra), the defendant was issued a summons in a Family Court neglect proceeding for allegedly beating his stepson. Two days later a police investigator visited the defendant. After Miranda warnings, the defendant, who had not retained or asked for a lawyer, admitted to spanking the child and noticing a handprint bruise on the child’s buttocks sometime thereafter. The defendant was subsequently charged with third degree assault, and sought to have these statements suppressed as violative of his right to counsel. The trial court denied the defendant’s motion to suppress his statements holding that his right to counsel had not attached in the Family Court neglect proceeding and the criminal proceeding had not commenced. The Court of Appeals affirmed.
While it is true, as the People argue, that the Court of Appeals noted in Smith (supra) that the Family Court proceeding was "civil in nature” and that the two procedures (Family Court and Criminal Division of the City Court) had "wholly different purposes” (62 NY2d, at 315), the court was absolutely clear that the critical factor in the case was that the defendant had never invoked his right to counsel or in fact retained counsel in the earlier neglect proceeding: "When interrogated by police investigating the potential criminal charges, such a person may waive the right to counsel in the absence of counsel, provided that Miranda warnings, if required by the circumstances of the interrogation, are properly given and that the person has not in fact retained counsel in relation to the neglect proceeding” (People v Smith, at 309). Furthermore, the Smith court explicitly distinguished the circumstances before it from Skinner (supra), where the suspect, who was not in custody, was questioned without his lawyer about whom the police were aware.
The unambiguous language of Smith (supra) indicates that if Mr. Smith was in fact represented by counsel in the (first) neglect proceeding, the decision would have been otherwise *771 regarding the statements in the (second) criminal case. Given this and Skinner’s (supra) clear viability, the instant case must turn on whether or not by retaining an attorney in the (first) civil lawsuit, Goldfinger had an attorney in a matter about which she was questioned by the prosecutor’s agent in the (second) criminal case.
I conclude that defendant Goldfinger indeed had an attorney in the matter about which she was questioned and thus could not be questioned in absence of counsel. To so find does not require an expansion of the right to counsel as the prosecutor so fears, merely an application of the above firmly established principles to these compelling facts. The claims against Gold-finger in the Federal civil RICO suit are virtually the same as those alleged in the indictment. One retains an attorney to protect oneself against charges of wrongdoing, whether they be criminal or civil. The defendant retained counsel to shield her from a civil action initiated by private attorneys: to hold that her retained attorney could not protect her from questions about the very same allegations merely because they were being asked by an agent of Government attorneys in the criminal action would render her right to counsel illusory (to borrow People v Skinner’s term).
As Skinner (supra) stressed, it is not the motives of the police which control our analysis, even where, as here, they appear to be salutary. The focus must be on the defendant’s invoking of her right to counsel. Furthermore, the defense is not arguing, nor is the court holding that a defendant may use an attorney to shield herself against future or ongoing crimes, or from other forms of police observations or investigations. We are considering here only the questioning of the defendant. The questioning by the prosecutor’s agent was about (alleged) past crimes, and the defendant had retained an attorney on those very issues. Finally, it does not matter that Ms. Goldfinger was unaware of the prosecutor’s investigation. As her words to her alleged coconspirator made clear, if she had known that Ms. Calderazzo was an agent of the prosecutor, Ms. Goldfinger would not have spoken to her and would have called her lawyer.
While my conclusion rests on the New York State right to counsel, there is also ample support for the result reached herein under the proscriptions of Code of Professional Responsibility DR 7-104 (A) (1). That provision prevents a lawyer from communicating directly with an adverse party to a civil action who is represented by counsel on the subject of the *772 representation without consent of the lawyer. Our Court of Appeals has noted that it "would be hard pressed logically to [prosecute] such conduct in the civil context yet blithely overlook it in the criminal sphere.” (People v Skinner, 52 NY2d, at 30, supra.) The Second Circuit has recently recognized that this Disciplinary Rule is independent of the Federal Sixth Amendment right to counsel and violations of the Disciplinary Rule may require suppression of statements. (United States v Hammad, 858 F2d 834 [2d Cir 1988].) I decline to so rule here since resort to the Disciplinary Rule is unnecessary; New York’s right to counsel compels the suppression of the statements here.
For the foregoing reasons the defendant’s motion to suppress the statements is granted.