■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDRIZ MARIN, Appellant. [627 NYS2d 16] —Judgment, Supreme Court, Bronx County (Martin Marcus, J.), rendered December 10, 1992, convicting defendant, upon his plea of guilty, of assault in the first degree and sentencing him, as a persistent violent felony offender, to 8 years to life imprisonment, affirmed.

Defendant contends that the hearing court should have suppressed his incriminating statement made without counsel on August 30, 1991, while in police custody, that he had slashed the complainant's face with a razor on July 3, because at that time he was represented by counsel in a pending Criminal Court matter concerning an incident that had occurred 3½ months earlier, on May 15, wherein he was charged with attempted assault in the third degree, harassment and criminal possession of a weapon in the fourth degree. We disagree. Although the two incidents involved the same victim, they were otherwise unrelated, and thus defendant's representation in connection with the prior pending incident was not a bar to his knowing and voluntary waiver of

*Miranda* rights herein even in the absence of counsel *(see, People v Bing,* 76 NY2d 331).

The May incident occurred at the Union Square subway station in Manhattan, and led to defendant's immediate arrest and arraignment in Manhattan Criminal Court. The July incident, which resulted in serious facial injury, occurred in the Bronx, and was reported to the police there. On August 23, defendant again menaced the victim at the Union Square subway station. The victim later told a Transit Police detective that this was the same man who had slashed her in July.

We note that the hearing court specifically credited the testimony of the interrogating detective that he had no knowledge of the May incident when he questioned defendant on August 30, and defendant offers no persuasive evidence to the contrary. The dissent focuses upon the alleged "similarity" of the two crimes. But "similarity" does not satisfy the test of "relatedness". In fact, the only significant common theme is the identity of the victim. Defendant's earlier harassment of this victim in the subway does not require a conclusion that the two crimes were "related", for purpose of assuming continuing representation by counsel, particularly where the first charge was at the misdemeanor level, subject to rapid disposition in Criminal Court, and the second offense was a serious felony committed in another county. Concur—Wallach, Asch, Nardelli and Mazzarelli, JJ.

Murphy, P. J., dissents in a memorandum as follows: The complainant, Norma Martinez, defendant's ex-common-law wife, claimed that on May 15, 1991, defendant pushed her against a wall at the Union Square subway station. Defendant was accordingly arrested, arraigned in Criminal Court on charges of attempted third degree assault, harassment and fourth degree criminal possession of a weapon (Docket No. 91N044043), and assigned counsel pursuant to article 18-B of the County Law. The case was thereafter adjourned, the defendant released on his own recognizance and an order of protection issued on Ms. Martinez' behalf. On July 3, 1991, however, Ms. Martinez initiated another complaint, on this occasion alleging that the defendant cut her with a piece of glass in the Bronx, near 346 Powers Street.

On August 23, 1991, Ms. Martinez filed yet a third complaint. This complaint alleged that she had again been harassed by the defendant at the Union Square subway station. The complaint was assigned to Transit Police Detective Mariani for investigation. In the course of his investigation and

before his arrest of the defendant on August 30, 1991, Mariani spoke to the complainant and to the Police Department Detective from the 43rd precinct in the Bronx who was investigating the July 3rd incident. He thus knew that both incidents involved the same complainant and the same alleged assailant. He also reviewed the TP 67 (Field Investigation Worksheet) completed in connection with the August 23rd incident. That document prominently noted the existence of the aforementioned Docket No. 91N044043 opened with respect to the May incident, and the circumstance that an order of protection had been issued in connection therewith. Indeed, the TP 67, dated August 23, 1991, read in pertinent part, "comp[lainant] reports that she already has an order of protection out on perp. #91N044043 taken out in N. Y. County—on 6-17-91. Judge Kahn for assault". In addition to the TP 67, Detective Mariani had had faxed to him the Police Department UF 61 completed in connection with the July incident which indicated that by reason of his alleged conduct on July 3rd the defendant was thought to have committed the crime of assault in the second degree *in violation of an order of protection.*[1] Detective Mariani, who had served in the Transit Police Force for more than a decade and as of August 1991 had been a detective for four years, denied knowing that the assignment of the above referenced docket number signified that formal criminal proceedings against the defendant had been commenced and acknowledged that he had not attempted to determine whether there had been a disposition of the case or whether the order of protection was still in force, either as of the date of defendant's interrogation or as of the July or August incident; he concededly did not run defendant's name through the BCIC or NYSIS computers.

Subsequent to defendant's arrest on August 30, 1991, he received *Miranda* warnings and in response to Detective Mariani's inquiries is said to have admitted with respect to the August 23rd "menacing" incident that, "he 'grabbed [Ms. Martinez] by the arm' and turned her around * * * [and she] yelled to the conductor to get the police, at which point he ran." When questioned as to the July 3rd assault, defendant is reported to have admitted that " '[h]e had approached [Ms. Martinez] on the street[; they] had an argument, he took a razor out of the bag he was carrying, [he] pointed the razor to her face, slashed her face with the razor, threw the razor

---

1. The UF 61 filled out subsequent to the July 3rd incident contained an "offenses box" in which was written "assault 2/VOP".

down on the street and fled." Upon being asked to commit these admissions to writing, however, defendant refused, stating, "I want to wait until I talk to my attorney."

It is established that once the right to counsel attaches at arraignment, the defendant may not be interrogated as to the matter upon which he or she was arraigned, except in the presence of counsel and, accordingly, that a defendant entitled to representation in a particular matter may not waive counsel with respect to that matter without counsel being present *(People v West,* 81 NY2d 370, 373-374; *People v Samuels,* 49 NY2d 218; *People v Settles,* 46 NY2d 154, 162-163). It is but a natural and equally well established corollary of this rule that police may not in the absence of counsel interrogate a defendant upon matters *related* to the charges upon which the defendant is entitled to representation since the defendant in supplying uncounseled responses to such interrogation might make disclosures as to the matter upon which he is represented; this would, of course, amount to an uncounseled waiver of the right to counsel subsequent to its attachment, something which, as noted, the law does not permit. As the Court of Appeals stated in *People v Townes* (41 NY2d 97, 102-103), "It has long been the law in this State that any incriminating statement made in the absence of counsel by a defendant in response to interrogation relating to the criminal charge under investigation after he has been arraigned or indicted is inadmissible in evidence against the defendant *(People v Waterman,* 9 NY2d 561, 565; *People v Di Biasi,* 7 NY2d 544, 550-551). This rule developed from our view that once an individual has been arraigned or indicted, formal criminal proceedings against him have commenced and any interrogation after that point would infringe upon a defendant's right to counsel and his right to be free from testimonial compulsion *(People v Stanley,* 15 NY2d 30, 32, citing *People v Waterman, supra,* pp 564-565)".

The foregoing principles are not disputed by the parties. Nor is it disputed that at the time of the custodial interrogation at which the defendant confessed to assaulting his former common-law wife on July 3, 1991 and August 23, 1991, he had been arraigned on and assigned counsel with respect to charges arising out of yet another assault upon the same victim said to have occurred on May 15, 1991. The only issue is whether the allegations relating to the two latter incidents respecting which the defendant was interrogated in the absence of counsel were sufficiently related to the earlier matter as to which charges had been previously brought and counsel

assigned, to render defendant's waiver of his right to counsel on the occasion of his interrogation invalid.

The factual and legal relatedness of the three incidents is self-evident. Here we have allegations by the same complainant to the effect that her former spouse, the defendant, on three closely spaced occasions between mid-May and late August of 1991, physically abused her. Indeed, not only were the participants in all three incidents and the nature of the abuse the same, but in two of the three incidents, the first and last, the assaults were alleged to have occurred in the identical subway station. Given the manifest similarity of the offenses alleged on each of the three occasions, the charges against defendant were certainly joinable pursuant to CPL 200.20 (2) (c), and in view of the undeniable pattern of spousal abuse it is likely that the charged offenses would have been viewed as mutually probative and thus also joinable pursuant to CPL 200.20 (2) (b); there is, of course, law which would support *Molineux* joinder in circumstances such as those here involved *(see, e.g., People v George,* 197 AD2d 588, *lv denied* 82 NY2d 925). Indeed, even if, as turned out to be the case, all of the offenses were not in the end joined, this was not attributable to their lack of mutual relation but solely to the fact that the July incident, occurring as it did in the Bronx, was pursued in Bronx County by the Bronx District Attorney leaving the Manhattan incidents to be separately addressed in New York County by the Manhattan District Attorney. The geographical impediment to joinder notwithstanding, the law is reasonably clear that a jury in either county could have had placed before it evidence relating to all three incidents on the theory that the evidence was in the aggregate probative of the defendant's motive to commit each offense charged. Certainly, the People make no argument to the contrary.

If the foregoing were not enough to establish the relatedness of the matters upon which the defendant was interrogated to the charges in connection with which the defendant had been assigned legal representation, the issue would appear conclusively settled by the circumstance that there had been an order of protection issued in the prosecution arising out of the May incident. It is clear that if the order of protection had been in force—and there was every indication that it was, at least with respect to the July incident, since the Police Department worksheet relating to the initial investigation of that incident (the UF 61) stated that defendant was wanted for assault in the second degree *in violation of an order of protection* (presumably the order of protection origi-

nally issued on May 15th and apparently, in light of the information contained in the aforementioned TP 67, extended on June 17th)—any admission by the defendant that he had committed acts of the sort proscribed by the order would have furnished ground for the imposition of penal sanctions within the concededly open criminal docket dating from May 15, 1991 (see, CPL 530.11). Given Detective Mariani's knowledge of the order and the docket in which it had been issued as well as his receipt and review of the UF 61 indicating that the order of protection had been violated on the occasion of the July 3rd incident, he should have been aware that his interrogation of defendant as to the July and August incidents raised at the very least a distinct risk of eliciting from the defendant an uncounseled admission directly contrary to his penal interest in the pending New York County prosecution. Surely there can be no question that the defendant's interrogation without counsel in this set of circumstances resulted in precisely what the law forbids, namely, an uncounseled waiver of the right to counsel subsequent to its attachment; the defendant had been assigned a lawyer to defend against the charges arising from the May 15 incident and if that representation was to be waived it had to be in the presence of counsel.

In the face of the obvious relatedness of the matters respecting which uncounseled confessions were obtained from the defendant to the matter in which defendant was represented, the People urge that the matters may nevertheless be deemed unrelated because the Trial Assistant in the Bronx consented to forego the use of the evidence of uncharged offenses at defendant's trial. However, one prosecutor's[2] convenient election to do without some evidence in no way diminishes the essential relatedness of the matters here involved or the consequent necessity of suppressing the confessions obtained in violation of the defendant's right to counsel. Where that right has been violated and a confession illegally obtained it is not the prosecutor's option to save the confession by sacrificing other evidence in the prosecutorial arsenal. It would seem plain that the prosecutor cannot, by gratuitously signalling his intention henceforth to treat matters as if they were unrelated, unilaterally curtail a defendant's right to the assistance of his lawyer during custodial interrogation upon a represented matter, yet unfortunately that is precisely the

2. It should be noted that the record contains no documentation of any concession by the New York County prosecutor to forego reliance upon evidence of other crimes.

proposition to which the majority by its affirmance would appear to give credence.

Also untenable in view of the relatedness of the offenses alleged against defendant, is People's claim that the defendant's relationship with counsel was not sufficiently substantial to require counsel's presence at the August interrogation. The substantiality of the lawyer-client relation is relevant only where the issue is the admissibility of statements made by a defendant respecting matters unrelated to the matter in which he is represented. In that category of cases, it is recognized that the right to counsel is entirely derivative and, accordingly, that the quality and duration of the underlying attorney-client relation may be subject to examination in determining whether there is an adequate predicate for the derivative right *(see, People v West,* 81 NY2d, *supra,* at 377-379) Where, as here, however, police inquiry ranges into matters that are not unrelated to, but rather are already the proper subject of mandated legal representation, the right is primary rather than derivative and may not be in any manner compromised even if it does not appear that the particular attorney-client relationship at issue is one of great substance. Indeed, the "indelibility" of the right to counsel in a particular matter may be based solely upon the commencement of formal accusatory proceedings; there is no necessity for an actual representational relationship, much less for one which a court would deem substantial *(see, People v West, supra,* at 373; *People v Samuels, supra; People v Settles, supra,* at 162-163).

Finally, given the primary nature of the right here asserted, Detective Mariani's claim—even if it were credible which it is not—that he had no actual knowledge of the criminal proceeding relating to the May 15 incident,[3] is of no moment. The

---

**3.** In this connection, the People's reliance upon the motion court's speculation that Mariani might have thought that the docket number had been assigned in a Family Court as opposed to a criminal proceeding, ought to be rejected. Mariani at no time testified that he thought, much less that had any reason to think, that a Family Court case was involved. The pertinent testimony reads as follows:

"Q Would your experience as a detective for the last four years and officer for the last ten years, do you have knowledge of whether or not the clerk uses docket numbers to assign cases?

"A Right.

"Q So, when you read Docket Number 91N044043, did you have an idea there may have been a criminal court case?

"A No.

"Q You had no idea?

inalterable fact is that Mariani's interrogation of the defendant was grossly violative of the defendant's indelible right to legal representation in the May 15 matter. As has been only recently reiterated by the Court of Appeals, "[A] suspect whose right has indelibly attached has no obligation to keep the police informed as to the status of the attorney-client relationship. Should the police wish to question defendant without counsel on the same matter after the right has attached, it is as a rule their burden to determine whether representation continues *(People v Marrero,* 51 NY2d 56, 59)" *(People v West, supra,* at 376). And, as is made clear by the portion of *Marrero (supra)* quoted in *West,* the obligation of the police to inquire as to the status of any arguably extant attorney-client relationship includes within it the obligation to ascertain whether the contemplated interrogation will extend to matters properly within the range of representational concern: "Once an attorney has appeared on the defendant's behalf we have refused to allow the police to rely on arguable ambiguities in the attorney-client relationship in order to justify police questioning of the defendant without the attorney being present * * * We have indicated that if the police are uncertain as to the scope of the attorney's representation, the defendant should not be questioned" *(People v Marrero, supra,* at 59).

The information possessed by Detective Mariani at the time of defendant's interrogation, even when viewed most favorably to the People, should at the very least have generated uncertainty as to whether interrogation would intrude upon matters under the aegis of an existing attorney-client relation. Mariani, after all, admitted that prior to arresting defendant he knew that defendant had been the subject of several similar and closely spaced complaints by his former wife, all to the effect that he had harassed and assaulted her. He knew as well that the first of these complaints had progressed to the point that a docket number had been assigned and an order of protection issued. Surely, it must have occurred to Mariani, an eleven year veteran of the police force who had served as a detective for four years by the time of the events here at issue, that the docket and order of protection stemming from the May 15 incident might well still be active and that, if they

"A No.

"Q Did you know what that number was even about? What the source of the number was? * * *

"A No."

were, the defendant's interests in that matter in which he would have been entitled to representation, might well be affected by admissions such as those he, Mariani, was about to seek. Given the information he had, Mariani was obliged to refrain from questioning defendant until and unless he had through additional inquiry ascertained that the contemplated interrogation would not implicate areas falling within the purview of an existing representational right. As Mariani acknowledged, however, no such additional inquiry was performed. It follows that the interrogation should not have gone forward and that the admissions elicited from the defendant which, as could have been anticipated, were directly prejudicial to his penal interests in the open May 15 Criminal Court case, should be suppressed. The majority's contrary conclusion to the effect that interrogation was permissible in the above described circumstances—circumstances in which the police should have understood that there was a very real risk of eliciting admissions bearing directly upon the subject matter of an existing attorney-client relationship—is no less than a "license to play fast and loose" with the hitherto "indelible" right to counsel (People v Ramos, 40 NY2d 610, 618). Certainly, no one would cite this as an instance in which the much vaunted judicial commitment to employ " '[t]he "highest" degree of [judicial] vigilance' " (People v West, supra, at 373; People v Harris, 77 NY2d 434, 439; People v Cunningham, 49 NY2d 203, 207) to safeguard a criminal defendant's right to the assistance of counsel was honored.

Accordingly, the judgment of the Supreme Court, Bronx County (Martin Marcus, J.), rendered December 10, 1992, convicting defendant, upon his plea of guilty, of assault in the first degree, and sentencing him, as a persistent violent felony offender, to a term of 8 years to life imprisonment, should be reversed, the motion to suppress statements granted, and the matter remanded for further proceedings. [See, 155 Misc 2d 941].