OPINION OF THE COURT
Charles H. Solomon, J.
The defendant, Jorie Wright, charged with one count of insurance fraud in the fifth degree,[1] has moved to suppress her oral and written statements on the ground that she was arrested in the absence of probable cause, and that her statements were given involuntarily and in violation of her Miranda rights and her right to counsel.
A Dunaway /Huntley hearing was held before me on December 11, 1996. At that hearing, the People called Detective William Ryan, who testified credibly. The defendant did not call any witnesses or testify in her own behalf.
Findings of Fact
Detective William Ryan of the New York City Police Department’s Arson and Explosion Squad was assigned to investigate a fire that occurred on Memorial Day, May 30, 1994, at a building located at 325 Broadway in lower Manhattan. Defendant, Jorie Wright, was a part owner of a Subway sandwich shop situated on the street level of that building. Ryan was investigating the fire as a possible arson because a five-gallon container of gasoline was found inside the Subway shop and because an eyewitness had seen two people enter the shop shortly before the fire began.
During the course of his investigation, Ryan contacted the defendant on a number of occasions. Defendant cooperated with Ryan and provided him with information and documents relating to the Subway shop. Ryan discovered that defendant had procured a new insurance policy for the premises just 3[1]/2 weeks prior to the fire and that the store had not been profitable and had a number of outstanding debts.
Ryan also learned that defendant, along with her sister, who was another part owner of the shop, had submitted an insurance claim asserting that various items were destroyed in the fire. Ryan became aware that the insurance company had not fully paid defendant’s claim and was conducting its own investigation into the facts and circumstances surrounding the fire and the insurance claim.
*676 Ryan’s investigation and the insurance company’s investigation ran parallel to one another, but were independent of one another. Ryan met with and spoke to investigators and lawyers from the insurance company on a number of occasions, and the insurance company provided Ryan with documents when he requested them and when Ryan provided the company with a subpoena for the documents.
During his investigation, Ryan also learned that defendant and her sister had retained an attorney, John Biller, to represent them in pursuit of their insurance claim. On August 23, 1995, defendant spoke to Ryan and asked him whether he had received from Biller a letter that requested copies of Ryan’s paperwork. Ryan told defendant that he had not received this letter but invited her to his office at One Police Plaza to examine photographs and a videotape pertaining to the fire.
The next day, on August 24, 1995, at 6:30 p.m., in response to Ryan’s invitation, defendant arrived by herself at the offices of the Arson and Explosion Squad at One Police Plaza. Present in the office along with Detective Ryan was Detective Raymond. Ryan first played a videotape of news coverage of the fire. Ryan then showed defendant photographs taken during the investigation of the fire.
At 7:00 p.m., reading verbatim from a sheet of paper containing the Miranda rights, Ryan advised defendant of her constitutional rights.[2] Defendant said that she understood each of her rights. Ryan did not record defendant’s affirmative responses on the Miranda sheet. Upon reading the last of the Miranda rights, when Ryan asked, "Now that I have advised you of your rights, are you willing to answer questions?”, defendant responded, "Do I need a lawyer?” Ryan told defendant that although she did not need a lawyer, if she wanted one, she could have one. Ryan added that if defendant retained an attorney he could no longer speak to her. Defendant stated that she had nothing to hide and that she was now willing to answer Ryan’s questions.
Defendant then made an oral statement. After a several-hour break in the questioning in which defendant was given something to eat, allowed to go to the bathroom, and permitted to telephone her sister, Ryan again read defendant her Miranda rights from the preprinted sheet. Defendant again answered each question affirmatively. This time Ryan recorded defendant’s responses on the sheet, but instead of writing *677 "Yes” as her answer to the first five questions on the sheet, Ryan mistakenly wrote the word "You”.
As defendant dictated her statement, Ryan began to type it into a word processor. Defendant read the typed statement, typed some changes to it herself, and then printed out the statement. Defendant, Detective Ryan and Detective Raymond then each signed the statement.[3]
At approximately 2:00 a.m. on August 25, 1995, after the written statement was completed and signed, John Biller, the attorney, called the Arson and Explosion Squad and spoke to Detective Ryan. Ryan told defendant that Biller was on the telephone and that he wanted to speak to her. Defendant refused to come to the phone, and screamed that she did not want to speak to Biller. Defendant told Ryan that the reason she did not want to speak to John Biller was that she had retained Meyer Biller, who was related to John Biller, as her public adjustor on the insurance claim. Because she blamed Meyer Biller for his participation in the submission of the inflated insurance claim, she did not want to speak to his relative, John Biller.
After completing the written statement, defendant was told that she was being placed under arrest, and Ryan began to prepare his arrest paperwork. Defendant was not handcuffed until she was taken to Central Booking later that morning. At no time during the questioning were any promises or threats made to defendant. At no time did she ever request to speak to an attorney.
Conclusions of Law
The primary issue that this case presents is whether defendant’s right to counsel indelibly attached in the instant criminal matter by virtue of defendant’s having retained counsel to pursue her insurance claim. Although I have found no appellate authority directly on point, for the reasons detailed below, I conclude that the right to counsel, which has been interpreted broadly in New York, has an outer limit, and this case falls outside that limit.
It is well settled that once a lawyer has entered a criminal proceeding to represent a defendant in connection with criminal charges under investigation, the defendant may not waive his right to counsel in the absence of the lawyer. (See, People v Hobson, 39 NY2d 479, 481 [1976].) Under these circumstances, *678 the right to counsel "indelibly attaches” regardless of whether the defendant is in custody. (See, People v Skinner, 52 NY2d 24, 29 [1980].) Equally axiomatic is that the right to counsel does not indelibly attach when that right to counsel is derived solely from a defendant’s representation on a prior, unrelated proceeding. (See, People v Steward, 88 NY2d 496 [1996] [reaffirming People v Bing, 76 NY2d 331 [1990].) This holds true regardless of whether the police were aware of defendant’s representation on the prior, unrelated proceeding. (See, People v Steward, 88 NY2d, at 498; People v Bing, supra, 76 NY2d, at 342-343.) Although Bing and its progeny authorize the uncounseled questioning of a defendant on new criminal charges unrelated to the criminal charges on which counsel had previously been obtained, Bing left open the question of whether such questioning is permitted when counsel has been retained by a defendant on a pending parallel investigation that is civil in nature.
Although the Court of Appeals has not squarely ruled on this issue, a few recent decisions provide some guidance. In People v West (81 NY2d 370 [1993]), for example, the defendant was the subject of a murder investigation and had retained an attorney to represent him at a lineup. The results of the lineup were inconclusive, and the defendant was not charged at that time. Three years later, the police received information from an informant that the defendant was involved in the murder. At the direction of the police, the informant surreptitiously tape-recorded several conversations with the defendant.
The Court of Appeals held that the defendant’s right to counsel had indelibly attached by virtue of his representation at the lineup some three years earlier. The Court reasoned that because the defendant had unquestionably retained counsel in the matter at issue, the burden was on the police to determine whether the attorney-client relationship had terminated. (People v West, supra, 81 NY2d, at 376, 379-380.) However, the Court emphasized that its decision was premised on the fact that the right to counsel had attached in the first instance, by virtue of defendant’s representation in the same criminal matter. (Supra, at 380.) If the issue was whether the right to counsel had attached at all in the matter about which defendant was questioned, the Court indicated that the burden would still be on the defendant to prove that he was represented. (Supra, at 378 [citing People v Rosa, 65 NY2d 380 (1985)]; see also, People v Henriquez, 214 AD2d 485 [1st Dept 1995] [burden on defense to prove that counsel, in the first *679 place, had actually entered the matter about which defendant was questioned].)
Applying that standard to the facts in the instant case leads to the inescapable conclusion that defendant has fallen far short of meeting her burden. Defendant did not call the attorney or any other witness, including her sister, at the hearing, nor did she testify herself. (See, People v Henriquez, supra.) The only relevant testimony in this regard was provided by Detective Ryan. Ryan stated that he was aware that John Biller represented defendant, but only on the insurance claim that she had submitted to her insurance company. At no time during Ryan’s investigation, which took place over the course of a year, nor at any time on the night of defendant’s questioning, was it ever suggested to Ryan that Biller or any other attorney had been retained by defendant to represent her in the criminal investigation. Indeed, even though defendant was not in custody on August 24, 1995, in an excess of caution, Ryan read defendant her Miranda rights twice that evening, and each time defendant waived her right to speak to an attorney.
The clearest proof that Biller never entered the criminal investigation came when Biller finally called Ryan’s office at 2:00 a.m. and defendant refused to speak to him because of his relative’s possible involvement in submitting the allegedly inflated insurance claim. Because the decision to retain counsel rests with the client, not the lawyer, Ryan was clearly authorized to accept defendant’s disclaimer of Biller’s representation. (See, People v Bing, supra, 76 NY2d, at 349; People v Lucarano, 61 NY2d 138 [1984].) There is simply no rule requiring the acceptance of an attorney’s assertion of representation over a defendant’s disavowal of such representation. Therefore, under this set of facts and circumstances, it is clear that defendant’s right to counsel had not indelibly attached by virtue of her representation in the civil proceeding.
Notwithstanding my conclusion that this case is governed by People v West (supra), some courts have read the post-Bmg right to counsel cases differently. These courts have held that an exception to Bing’s no-derivative-right-to-counsel rule still exists and that uncounseled questioning is prohibited when a defendant has retained counsel on a pending matter "related” to the one in which the questioning arises. (See, e.g., People v Marin, 155 Misc 2d 941 [Bronx County 1992], affd 215 AD2d 267 [1st Dept 1995].) Under this test the suppression court must first determine, as a matter of law, whether the pending and current cases are related. If the cases are related, then *680 defendant’s right to counsel attaches and cannot be waived in the absence of counsel. If the cases are not so related, then the burden again falls on the defendant to establish that, counsel on the pending case represented her on the new charges.
Even under this formulation, defendant’s indelible right to counsel cannot be said to have attached in the instant case. Indeed, two cases — People v Smith (62 NY2d 306 [1984]) and People v Snyder (221 AD2d 870 [3d Dept 1995]) — stand for the proposition that because civil and criminal cases have wholly different purposes, they should rarely, if ever, be considered "related” for purposes of deciding whether the right to counsel has indelibly attached.
In Smith (supra) the defendant was issued a summons in a Family Court neglect proceeding for allegedly beating his stepson. Two days later a police investigator visited the defendant. After Miranda warnings, the defendant, who had not retained or asked for a lawyer, admitted to spanking the child and noticing a handprint bruise on the child’s buttocks sometime thereafter. The defendant was charged with third degree assault and sought to have his statements suppressed as violating his right to counsel which he claimed had attached by virtue of the commencement of the Family Court proceeding. The County Court denied the defendant’s motion to suppress his statements and held that there was no violation of his right to counsel.
The Court of Appeals affirmed. Although acknowledging that the Family Court proceeding and the criminal assault charge were based on the same facts, the Court based its decision, in part, on the fact that the Family Court proceeding was "civil in nature” and that the two procedures (Family Court and Criminal Term) had "wholly different purposes.” (People v Smith, supra, at 315.) The Court further reasoned that to prohibit the police from questioning a person who had been served with a Family Court petition that was based on the same facts as the criminal charges would "unduly limit the investigatory function of the police with respect to a potential criminal charge”. (Supra.)
To be sure, in Smith (supra) the Court of Appeals indicated, in dicta, that if counsel had been retained in the Family Court proceeding its decision denying suppression would have been otherwise. (People v Smith, supra, 62 NY2d, at 312-313, 315.) However, this dicta has never evolved into controlling precedent. For example, in People v Snyder (supra, 221 AD2d, at 871), the Third Department held that even though the defen *681 dant had actually retained counsel in the related Family Court proceeding, the defendant’s indelible right to counsel had not attached. Significantly, the Snyder Court premised its decision on the same policy considerations as did the Smith Court— that a finding that the right to counsel had attached by virtue of defendant’s retention of counsel in the Family Court proceedings would unduly restrict the investigation of possible criminal charges. (Supra.)
Thus, even if I was required to determine whether the insurance fraud charges were "related” to defendant’s pursuit of her insurance claim for which she had retained counsel, I would conclude, based on Smith (supra) and Snyder (supra), that the two investigations were not so related. (See also, People v Cortes, 224 AD2d 309 [1st Dept 1996] [defendant’s right to counsel did not indelibly attach in an arson investigation based on prior representation by an attorney in purchasing the building set afire].) Because defendant’s civil and criminal cases are not related as a matter of law, the burden is on defendant to establish that John Biller represented her on the criminal charges. (See, People v Rosa, 65 NY2d 380, supra.) For the reasons given above, defendant has failed to sustain that burden.
Notwithstanding this interpretation of the law, a court of coordinate jurisdiction considered this issue and granted suppression of the defendant’s statements. (See, People v Goldfinger, 149 Misc 2d 765 [NY County 1991].) In Goldfinger (supra, at 771) the suppression court held that the right to counsel had indelibly attached where defendant had retained counsel in a civil lawsuit in which the claims were "virtually the same as those alleged in the indictment.” The court reasoned that "[o]ne retains an attorney to protect oneself against charges of wrongdoing, whether they be criminal or civil.” (Supra.)
The instant case is distinguishable from Goldfinger (supra) in a number of important ways. First, in the case at bar, the civil and criminal investigations, while both involving the same incident, each had a different focus, and were thus, not "virtually the same”. The criminal investigation focused on whether arson had been committed; whereas, the civil investigation focused on whether insurance fraud had been committed. Granted, defendant Wright was ultimately only charged with one count of insurance fraud based, in part, on her statement. However, the mere fact that at the conclusion of his investigation, Ryan only had probable cause to arrest defendant for insurance fraud, and not arson, does not alter the reality that *682 Ryan — a member of the Arson and Explosion Squad — was primarily interested in whether arson was committed. Given the wholly different purposes of the instant criminal and civil investigations, to shield defendant from the questioning that occurred here would place an undue limitation on law enforcement’s ability to investigate potential criminal charges.
Moreover, this case is distinguishable from Goldfinger (supra) in a second important way. In Goldfinger, the defendant was questioned by a prosecutor, whereas here the defendant was questioned by a detective. Therefore, the secondary concern noted in Goldfinger (supra, at 771-772), regarding a violation of the Code of Professional Responsibility governing attorneys, was not present here.
Thus, under either approach — the approach that places the burden on the defendant, or the approach that calls for the suppression court to rule on "relatedness” — defendant’s right to counsel had not indelibly attached when Ryan questioned her on the criminal charges on August 24, 1995. Accordingly, defendant’s motion to suppress her statement because her right to counsel was violated is denied.
Defendant’s remaining claims in support of suppression of her statements are without merit and can be dealt with in a more cursory fashion. As to the Dunaway branch of defendant’s motion, defendant was not arrested until after her partly incriminating statements were completed. Therefore, Ryan had probable cause to arrest. Indeed, Ryan would have been justified in arresting defendant prior to her statements, based on the information he had gathered during the course of his investigation into the fire and defendant’s insurance claim. (See, CPL 140.10; People v De Bour, 40 NY2d 210, 223 [1976].)
Nor was defendant in custody during her questioning by Ryan and therefore his reading of the Miranda rights was unnecessary. The objective test for determining custody, set forth in People v Yukl (25 NY2d 585, 589 [1969]), is whether a reasonable person, innocent of any crime, would have believed she was in custody. In the instant case, that standard was easily met, where defendant went to Ryan’s office voluntarily, was not handcuffed or physically restrained before or during the questioning, and was questioned in an investigatory, rather than an accusatory, manner. (See, People v Walker, 181 AD2d 636 [1st Dept 1992].) In any event, defendant’s statements were made voluntarily and after knowing and intelligent waivers of her Miranda rights. (See, People v Sirno, 76 NY2d 967 [1990]; North Carolina v Butler, 441 US 369.)
*683 Finally, defendant’s question, "Do I need a lawyer”, was not an assertion of the right to counsel. An invocation of the right to counsel must be clear and unambiguous; a defendant must state unequivocally that he wants an attorney. (See, People v Glover, 87 NY2d 838 [1995]; People v Hicks, 69 NY2d 969 [1987]; People v Diaz, 161 AD2d 789 [2d Dept 1990].) Here, on its face, defendant’s inquiry did not unequivocally inform the police of her intention to assert her right to counsel. Under these circumstances her right to counsel did not attach. (See, People v Hicks, supra, at 970.)
Accordingly, defendant’s motion to suppress her statements is denied.

. Although defendant was originally indicted for insurance fraud in the third degree, in an earlier decision this court reduced this charge to insurance fraud in the fifth degree.

. The Miranda sheet was received in evidence as People’s exhibit 1.

. The statement was received in evidence as People’s exhibit 2.